## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-115-SLR |
| | : | |
| CHARLES A. WEBSTER, JR., | : | |
| | : | |
| Defendant. | : | |

---

### DEFENDANT CHARLES A. WEBSTER, JR.'S MEMORANDUM IN SUPPORT OF HIS MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

Charles A. Webster, Jr., by and through his undersigned counsel, Robert D. Goldberg, respectfully requests that the Court grant his Motion to Suppress Physical Evidence and Statements.  As shown herein, the State of Delaware and its Probation and Parole Officers did not have a reasonable basis for conducting a search of Mr. Webster's residence for contraband in August of 2007 when he was arrested for violating the terms of his probation.  As a result, the items seized in that search should be suppressed and the statements made thereafter suppressed also as the fruit of the poisonous tree.

### PROPOSED FINDINGS OF FACT

On March 23, 1998, Mr. Webster entered a plea of guilty, pursuant to a plea agreement in the New Castle County Superior Court. (GX 2, p.44)[1] In accordance with the plea agreement, Mr. Webster pled guilty to the following charges: (1) assault first; (2)

---

[1] Reference here is to Exhibit 2, submitted by the Government at the July 1, 2008 suppression hearing.  Government Exhibits are referred to throughout as (GX_, p.__).  Exhibits submitted by the Defendant, the pages of which have which have been numbered consecutively, are referred to as (DX_, p. _).

possession of a firearm during the commission of a felony; and (3) reckless endangering in the first degree. On January 29, 1999 Mr. Webster was sentenced to consecutive terms of imprisonment to be followed by Level III intensive probation (GX 2, pp. 45-48). The sentencing court made note of what it characterized as Defendant's long and violent juvenile record and included in its Order a statement as follows:

> Note: Defendant has a long violent, juvenile record. As soon as Defendant violates probation, he must be taken off the street. Defendant is lucky he received a Rule 11 plea. (GX 2, p. 48)

Two lines beneath the above-quoted note, the Sentencing Order states: "Zero Tolerance" (GX 2, p. 48) Thus, based on Mr. Webster's record as a juvenile, the authorities in charge of Mr. Webster's probation were admonished by the sentencing judge to be very strict with him and to show zero tolerance for any probation violations.

In accordance with the sentencing order, Mr. Webster was placed on Level III probation and Angela Latsko, a Senior Probation Officer with the Delaware Department of corrections, began supervising him in June of 2006. (Tr.-76,77)[2] During that time, she was mindful of Judge Silverman's "zero tolerance" sentencing statement. (Tr.-77:17-20) Nonetheless, Mr. Webster's probation was relatively unremarkable. Officer Latsko testified that he missed one curfew. (Tr.-78) Also, she stated that he was supposed to obtain and remain gainfully employed and that he was unemployed and did not pay on his "monies" (Tr.-79:8-11) However, Officer Latsko admitted that Mr. Webster reported to probation and remained arrest free (Tr.-79) No violations were filed against him and he remained on probation until August 23, 2007 when she decided to arrest him. (Tr.-78)

---

[2] Reference here is to the transcript of the July 1, 2008 suppression hearing which is referred to throughout as (Tr.-_).

The reasons for the arrest are purportedly listed on the Arrest/Search Checklist which was filled out subsequent to Mr. Webster's arrest and which generically states that: (1) Reason exists to believe that offender is engaged or about to engage in a clear and substantial risk to the community or their self; (2) Offender has a capias history and (3) Offender is likely to abscond. (DX-3, p. 52)

Although Officer Latsko was the person who decided to arrest Mr. Webster she was not the one who decided to search Mr. Webster's residence. That decision was made by Jeanette Lingafeld, who is also a Senior Probation Officer in the Department of Probation and Parole. (Tr.-4)  At the time she authorized the August 23, 2007 search, Officer Lingafeld was assigned to the County Safe Streets Program where her mission was, *inter alia*, to make sure probationers abided by the conditions of their probation. (Tr.-5)

Mr. Webster came to Officer Lingafeld's attention when she spoke with a Detective Alfree. (Tr.-19)  Detective Alfree in turn was speaking to Detective Lankenstein of the New Castle County Police who was investigating two shooting incidents. (Tr.-19-21)  The first incident occurred on August 20, 2007.  In that incident, Mr. Webster was the victim of a shooting. (Tr.-21)  In the second incident, which occurred on August 22, 2007, Mr. Webster was in the city with his cousin.  After he left the area, someone shot his cousin in the face. (Tr.-19-20)

Based on the information she had about the two shooting incidents, as well as Mr. Webster's criminal history and the sentencing order, Officer Lingafeld testified in her direct examination that she phoned her supervisor and sought permission to conduct a search of Mr. Webster's residence. (Tr.-22)  Later in her testimony however, she was able

to cite only one basis for suspecting that Mr. Webster possessed contraband, *ie.,* that he was involved in criminal activity. (Tr.-47-48)  A close examination of the three purported reasons for suspecting that Mr. Webster was engaged in criminal activities shows as follows:

### (1) Criminal History:

While Mr. Webster does have prior convictions, a part of his past record, which Officer Lingafeld relied upon, consists of records of arrests which did not result in convictions.  Nonetheless, Officer Lingafeld took them into account because Mr. Webster was "... arrested for it." (Tr.-32:15-17)  Importantly, these offenses and arrests all date back to the 1990's.   There were no offenses or arrests after that. (Tr.-33:15-17) Similarly, Officer Lingafeld relied upon a history of nine capiases.  All of those capiases were issued before 1998. (Tr.-40:11-16)  Officer Lingafeld testified that in her training she is not taught to distinguish between old capiases and newer capiases. (Tr.-41:1-5)

### (2) Mr. Webster's Involvement in Violence:

(A) The Shooting of Mr. Webster's Cousin:   Officer Lingafeld was made aware of the fact that Mr. Webster's cousin was shot on August 22, 2007, and that he had been at the location where the shooting took place but had left before the incident occurred.  When asked what the connection was between that shooting and Mr. Webster, she stated that there was some thought on the part of the detectives that Mr. Webster was robbing drug dealers. (Tr.-42:12-16)  Asked why anyone would shoot Mr. Webster's cousin because of this, Officer Lingafeld posited the theory that they (presumably robbed drug dealers) "...probably heard that he was on that corner and they rode up to that corner and started shooting." (Tr.-42:22-24, 43:1)  Officer Lingafeld admitted that this

4

was just a theory. (Tr.-43:2-3)  Further, she knew little about the circumstances of the shooting.  Fourteen shots were fired at the vehicle in which Mr. Webster's cousin was shot.  When asked if the gunman might have been shooting at the other occupant of the car, Officer Lingafeld stated that she had "...no indication of who they were firing at." (Tr.-45:15-22)

      **(B)**    **The shooting of Mr. Webster on August 20, 2007:**  Officer Lingafeld stated on Direct examination that she has found that people involved in criminal activity have a tendency to have violent crimes committed upon them more frequently.  Patrick Cronin, her supervisor expanded on this theory in his testimony, stating that "...individuals who were shot frequently were the persons who were involved as shooters in the incident or a previous incident..." (Tr.-70 Lines 3-5)  According to Mr. Cronin, if someone with a criminal history was involved in a shooting, he expected that another shooting would follow. (Tr.-70)  however, this theory was not supported by any scientific analysis.  Mr. Cronin admitted that there was no study to back up his theory and that it was instead based on research he had performed, but not published. (Tr.-71)  In fact, Mr. Cronin never even wrote down the results of his research, could not say if the samples he used in his research were statistically relevant and had never had his research vetted or peer reviewed. (Tr.-72-73)  Most importantly, he never looked into the shootings themselves, focusing instead only on the fact that they had occurred.  In his words:

> "...But I had not looked at it at this time.  I looked at just the facts of the shootings as they were related to me and what I knew about Mr. Webster and what I knew about shootings in general, not about the specifics of that shooting in general (TR.-75 lines 4-8)

**(C) The Sentencing Order:**

Citing Mr. Webster's violent criminal history, as a juvenile, the sentencing court imposed a zero tolerance condition upon Mr. Webster. (GX2-45-48)   Read clearly the sentencing order merely provides that the conditions of Mr. Webster's probation are to be strictly enforced. (GX2-45-48)     It imposes no special conditions under which Mr. Webster is to be searched for contraband.   Instead, its clear emphasis is that he to be arrested and lose his probationary privileges if he commits any infraction.

## PROPOSED CONCLUSIONS OF LAW

Under the Fourth Amendment of the United States Constitution, citizens of the United States are protected from unreasonable searches and seizures.  The Due Process Clause of the 14th Amendment extends this fundamental right to protect citizens from unreasonable searches and seizures by the states as well.  *State v. Thomas*, 2007 WL949491 (Del. Super., 2007)  Delaware has a similar statute, Article I § 6 of the Delaware State Constitution under which its citizens are provided protection similar to that contained in the Fourth Amendment.  In fact, Article I § 6 has been found to afford even greater protection to citizens of the State of Delaware than that provided by the Fourth Amendment of the United States Constitution.  See, *Jones v. State*, 745 A.2d 856 (Del. Supr., 1999)

In summary, the law is that, absent exigent circumstances, law enforcement authorities may not search someone's home without a warrant.  However, the rule is different when it is applied to persons on probation.  Probationers do not have the same rights accorded to citizens.  Nonetheless, while the residence of a probationer may be searched without a warrant, constitutional guarantees do still exist and reasonable grounds are nevertheless necessary before a search of a probationer's private residence

may be conducted. See, *Griffin v. Wisconsin*, 483 U.S. 868, 107 SCT 3164, 97 L. ED. 2d

709 (1987). In *Griffin* the United States Supreme Court endorsed a Wisconsin procedure

that allowed probation officers to essentially act as magistrates and to conduct

warrantless searches, as long as they were following a statutory scheme which required

them to have "reasonable grounds" for the search.

Delaware has a statutory scheme akin to that approved by the *Griffin* Court. 11

*Del. C.* § 4321(d) provides that:

> Probation and Parole officers shall exercise the same powers as
> constables under the laws of this state and may conduct searches of
> individuals under probation and parole supervision in accordance with
> department procedures while in the performance of the lawful duties of
> their employment and shall execute lawful orders, warrants, and other
> processes as directed to the officer by any court, judge, or board of parole
> of this state...

Pursuant to 11 Del. C. § 4321(d) the Delaware Department of Corrections has

adopted a regulation (Procedure 7.19) which establishes the procedures probation and

parole officers are to follow when arresting and/or searching probationers. Specifically, §

7.19 (VI)(E) outlines the factors which should be considered when deciding to conduct a

search. (DX1-14) These factors are set forth under subsection (E) and are reproduced on

the arrest-search checklist which is to be filled out by the officer requesting the search

and her supervisor prior to the search.[3]

As *Griffin* makes clear, Probationers do not lose all of their constitutional rights to

be free from unreasonable searches and seizures by virtue of the fact that they have a

criminal record. While they have less rights than someone without a criminal record,

---

[3] In the instant case, Officer Lingafeld testified that she and her supervisor, Patrick Cronin,
discussed the search factors by phone and that Mr. Cronin gave his oral approval for the search.
(Tr-24-25)

*Griffin* makes clear that a Probationer may not be searched absent "reasonable grounds" and impartial process to determine whether or not "reasonable grounds" exist. Conceptually then, regulation 7.19 provides a surrogate process for determining whether or not reasonable grounds for a search exist.    The probation officer collects the information and passes it along to the supervisor who acts as an independent magistrate, keeping in mind both the public interest and the welfare of the probationer. *Griffin,* p. 719.  It is the supervisor therefore who makes the key decision and whose judgment is relied upon in order for a search of a probationer to pass constitutional muster.  In the instant case, that process was seriously flawed.

To begin, the burden is on the Government to prove that the warrantless search was conducted properly, in accordance with one of the exceptions to the warrant requirement. *United States v. Chambers*, 228 F. Supp. 2d 474, 476 (D.Del., 2002).  Here, the Government cannot meet that burden.    Officer Lingafeld testified as follows regarding the reasons she believed that Mr. Webster might have contraband:

> Q.    And I just want to summarize briefly.  Your reason for believing that Mr. Webster had contraband was that you thought he was involved in violence and might get a gun to defend himself?
>
> A.    I believed that he was involved in criminal activity, yes.
>
> Q.    Criminal activity. Any other factors that you thought would indicate he had contraband on him?
>
> A.    No.
>
> Q.    Now, when you say that you thought he would have a gun to defend himself, did you write that anywhere in any of the reports that you provided?
>
> A.    No.
>
> Q.    Because I have looked through every single report that you did and I don't see anywhere where you say he is going to get a gun to defend himself.

A.     I did not say that.

Q.     Did you have any reliable informants telling you that he might have a gun?

A.     No.

Q.     And you would have written that down if you had one, wouldn't you?

A.     Yes.

Q.     And you said something previously that somebody said he was shaking down drug dealers or doing something like that?

A.     Yes.

Q.     And that was supposition, I assume, by someone?

A.     Yes.

Q.     And that's not in any of the reports either, is it?

A.     No, it's not.

(TR-47 line 23-TR-49 line 7)

As shown above, Officer Lingafelt did not articulate any reason or evidence in her reports that Mr. Webster might be armed or might otherwise possess contraband. Instead, she relied upon information she received from Officer Alfree who was in turn was relaying information he received from Detective Lankenstein of the New Castle County Police. The information received was that there had been two shooting incidents, one which involved Mr. Webster as a victim and the other which involved his cousin, also as a victim. Based upon these two incidents, the prior criminal record of Mr. Webster and the information contained in the sentencing order, Officer Lingafeld requested approval for an administrative search. The information that she had and the information she relayed to her supervisor, Patrick Cronin, is insufficient to support a search that complies with constitutional standards.

In *State v. Thomas*, 2007 Wl 9494491(Del Super., 2007) a Probationer's home was being used by a third person who would stand outside her residence and, each time a Police Officer drove by, would enter the residence and watch through a slightly open door. Based on the conduct of the suspicious third person, and the fact that the probationer had admitted to smoking marijuana to her Probation Officer, permission was sought to search the Probationer's residence under § 7.19. The request to perform a search was granted and drugs and a firearm were discovered in the subsequent search of the probationer's residence. After her indictment on multiple charges, the defendant moved to suppress.

The *Thomas* Court held that the search was unreasonable and suppressed the evidence seized in the search. In so doing, the Court noted that the surveilling officers never saw the third person or the probationer commit any crime. The fact that the third person was acting suspiciously, in itself, was not sufficient to support a search because there could be innocent reasons for that conduct.

In the case of Mr. Webster, the same reasoning applies. Not one person was able to articulate, first hand or even through hearsay, that Mr. Webster had committed a crime, or that he possessed contraband. Instead, the supporting grounds for the search were based on theories by the Probation Officer and research conducted by Mr. Cronin. Mr. Cronin's "research" which he cannot even say is based on statistically relevant data (Tr.-72) was not vetted or otherwise peer reviewed (Tr.-72-73) and is not even written down (Tr.-72:2-3) It cannot therefore provide a reasonable basis for concluding that Mr. Webster possessed contraband. If constitutional protections are to have meaning,

unscientific and unverifiable "research" cannot serve as the basis for reasonable suspicion.

Similarly, the fact that Mr. Webster was in the vicinity where a crime was committed and had left shortly before it occurred, does not indicate that Mr. Webster is engaging in crime. If the investigation of the actual crime had revealed that Mr. Webster was somehow involved, or that he actually was the target, that would certainly be significant. However, that is not what occurred here. Instead, Jeanette Lingafeld focused on the mere fact that Mr. Webster was in the vicinity before the attack on his cousin. Consequently, Officer Lingafeld was not familiar with the details of the investigation, (Tr. 43:23-24-44:1-4) nor was Mr. Cronin, who stated explicitly that the mere fact that the incident occurred was what was relevant to him. (Tr.-74:13-20)

The other reasons proffered by the Government do not withstand scrutiny. Thus, as shown previously, the nine capiases dates back to the 1990s with the last date a capias could have been issued being 1998. Similarly, Mr. Webster's criminal history was not only not as bad as represented on direct by Officer Lingafeld, but also dates back to the 1990's. cf. Tr.10-11 with Tr. 30-32. The fact is that he was on "zero tolerance" probation for well over a year and was not violated until August 23, 2007, the date he was arrested for curfew violations. The violent offenses were, as noted by the sentencing judge, juvenile offenses and that is the basis for the statement in the sentencing order that the Defendant had a "long violent juvenile record" (TR-13).

The Government also cites the conditions of release which Defendant was subject to. One of these conditions states that:

> "You are subject to arrest and to a search of your living quarters, person, or vehicle at any time by a Probation/Parole Officer" (Conditions of Release form, Government Exhibit 4; TR-17)

It must be presumed that the Department of Corrections does not intend that this statement, or others of its ilk, rewrites or otherwise alters the constitutional, statutory, and regulatory provisions governing searches and seizures of probationers. Certainly there is no authority cited for such a proposition and while a probationers' rights with regard to searches are more circumscribed than those of other citizens, they still have some rights and, in fact, those rights have a constitutional dimension. See, *eg., Griffin, supra.* Surely, the conditions of release did not alter these rights.

As shown above, the search should be suppressed because there simply is no reasonable suspicion that Mr. Webster had contraband. However, the decision to search Mr. Webster's residence suffers from an even more fundamental flaw. In the instant case, the decision to search Mr. Webster's residence was made by Officer Lingafeld and approved by her supervisor, Patrick Cronin. However, neither Officer Lingafeld nor Mr. Cronin assessed independently the reliability of the information they received to determine whether or not that information supported a reasonable suspicion to search Mr. Webster's dwelling.

The recent Delaware Supreme Court decision in the case of *Culver v. State of Delaware,* C.A. No. 0610016178 (Del. Supr., August, 5, 2008) is instructive on this point. In *Culver,* the Delaware Supreme Court held that an administrative search did not comply with Procedure 7.19 because, *inter alia*, the probation officers did not conduct an independent assessment of the information they received. There, the impetus for the search of the probationer came after an Officer of the Delaware State Police received an

anonymous tip that a probationer was selling drugs.  Relying upon the information provided by the police officer, the Probation and Parole Department authorized a search of the probationer's dwelling.

The Delaware Supreme Court suppressed the search, holding that it was the obligation of the probation and parole officers to assess the information given to them and to independently determine if reasonable suspicion exists.  The *Culver* Court held that they could not merely rely upon the information given to them by police officers.

In *Culver*, the probation officer testified that the decision to conduct the search of the probationer's residence was based on three reasons: (1) he had failed a drug test during probation; (2) he had missed a curfew; (3) the probation officer received information from the police officer that the probationer possessed contraband. (*Culver* at p. 17)  Although the Government contended that the first two reasons alone constituted grounds for a search, *Culver* Court recognized that those two factors alone would not have triggered a search and that it was the tip transmitted by the police officer that was the catalyzing agent for the search.  Therefore the Court focused on the tip, in order to determine whether or not there was reasonable suspicion for a search.  After reviewing the circumstances, the Court held that the Probation Officer's reliance upon the police officer, without an investigation of the underlying facts, deprived the Probation and Parole Department of a reasonable basis to conduct a search.

Applying *Culver* to the facts at bar, it is clear that it is squarely analogous.  Here, it is the fact that there were two shootings which spurred Officer Lingafeld to request permission to conduct a search.  Yet, it is clear that she relied upon the information given to her by the police officers and did not conduct an independent assessment of the

information supplied to her. Thus, when asked about the circumstances surrounding the shooting of Mr. Webster's cousin, Officer Lingafeld did not know if the other person in Mr. Webster's cousin's vehicle might have been the intended target (Tr.-43:10-22) nor did she have other details of the investigation. (Tr. 43:23-24-44:1-4) When asked what the connection was between the Cousin's shooting and Mr. Webster, Officer Lingafeld stated that she had heard from a police officer that Mr. Webster might be robbing drug dealers. (Tr.-42:12-17) Curiously, this theory never surfaced in her notes as a connection between the shooting and Mr. Webster. (Tr.-48:22-24, 49:1-7) Yet, it was the only explanation she could offer at the hearing of a connection between the shooting and Mr. Webster. (Tr.-48-49)

Mr. Cronin was even more candid. He stated as follows:

"I looked at just the facts of the shootings as they were related to me and what I knew about Mr. Webster and what I knew about shootings in general, not about the specifics of that shooting in general."(TR-75:L4-L8)

As the above quote makes clear Mr. Cronin was not interested in the facts surrounding the shootings and made no independent assessment as to whether or not those facts indicated criminal activity on the part of Mr. Webster. Instead he took the mere fact that the two shootings occurred, making no investigation into the circumstances of how they occurred and concluded, based on his unscientific research that reasonable suspicion existed to conduct a search.

In this case as in *Culver*, it is clear that the impetus for the arrest came from the police officers investigating the two shootings, and absent that information, the Department of Probation and Parole would not have conducted a search. As stated in *Culver*:

14

...Probation officers saw no need to depart from routine and search Culver's dwelling before they heard from Lieutenant Ogden. It is readily apparent that the probation officers did not believe that their regulations governing the supervision of probationer given those two factors alone, would warrant an administrative search of Culver's dwelling. *id.,* at 18

In *Culver*, as here, the Government contended that it had more extensive grounds than just the uncorroborated, uninvestigated information received from the police about criminal activity. The *Culver* Court dismissed the other reasons proffered by the Government because it realized that the real impetus for the arrest came from the unverified information received from the police. As stated by the *Culver* Court:

...Only after the introduction of Lieutenant Ogden's unfounded tip did probationer officers decide to depart from routine and conduct an administrative search. Because probation officers apparently concluded, in the ordinary course of business, that there was no basis to search Culver's dwelling by reason of a single episode twenty minute delay in calling in from curfew and for improving drug test results, those two additional reasons failed to provide the reasonable suspicion needed to justify an administrative search of Culver's home. (*id.,* at 18)

As in *Culver*, it is clear here that the impetus for the search was the information Officer Lingafeld received from Detective Alfree about the two shooting incidents. As shown by the testimony at the hearing, neither Officer Lingafeld nor Patrick Cronin, her supervisor, made any effort to investigate what occurred. Instead, the decision to make the search rested on Patrick Cronin's knowledge that shootings had occurred and on his unscientific, unsupported research that persons involved in shootings may be armed.

To uphold a search under the circumstances as outlined above would render the statutory and regulatory scheme devised to comply with the Constitution and *Griffin* meaningless. In the absence of a fair and objective determination by a supervisor in the

Department of  Probation and Parole that reasonable suspicion for a search exists, that search and the fruits of it must be suppressed.

Finally, if the search is suppressed, as it should be, the statements made by Mr. Webster, after he was taken into custody, and after he was questioned about the weapons that were found, must also be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Dated: September 5, 2008

**BIGGS AND BATTAGLIA**


/s/Robert D. Goldberg
Robert D. Goldberg (ID#631)
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Attorneys For Defendant
Charles A. Webster, Jr.

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JEFFREY CULVER, | ) |
| | ) No. 348, 2007 |
| Defendant Below, | ) |
| Appellant, | ) Court Below: Superior Court |
| | ) of the State of Delaware in |
| v. | ) and for New Castle County |
| | ) |
| STATE OF DELAWARE, | ) C.A. No. 0610016178 |
| | ) |
| Plaintiff Below, | ) |
| Appellee. | ) |

Submitted: June 18, 2008
Decided: August 5, 2008

Before **STEELE**, Chief Justice, **HOLLAND, JACOBS, RIDGELY**, Justices and **NOBLE**, Vice Chancellor,* constituting the court *en banc*.

Upon appeal from the Superior Court. **REVERSED, VACATED** and **REMANDED**.

Albert M. Greto, Wilmington, Delaware for appellant.

Gregory E. Smith, Department of Justice, Wilmington, Delaware for appellee.

**STEELE**, Chief Justice, for the Majority:

*Sitting by designation pursuant to Del. Const. Art. IV § 12.

We address, for the first time, the proper procedures that parole and probation officers must follow after they receive a tip from police officers under their statutory authority to search probationers.[1]  In this case, probation officers searched probationer-appellant Jeffery Culver's home after police "tipped off" probation officers that they suspected that he was involved in drug activity.  On appeal, Culver contends that the probation officers violated 11 *Del. C.* § 4321, and Parole and Probation Procedure 7.19 promulgated under that statute, when they decided to search his home.[2]  Specifically he contends that 7.19 does not permit probation officers to search a probationer's dwelling based solely on a request by police officers.  Instead, he argues that 7.19 requires probation officers to assess independently the reliability of any information to determine whether that information, in the ordinary course and scope of the probation officer's supervisory duties, would support a reasonable suspicion to search a probationer's dwelling.

A majority agree that 7.19 requires probation officers to assess any "tip" relayed to them and independently determine if a reasonable suspicion exists that would, in the ordinary course of their duties, prompt a search of a probationer's dwelling.  In this case, the probation officers accepted, without conducting any

---

[1]    We address any statutory violation before reaching questions under the United States and Delaware Constitutions. *See Williams v. State*, 818 A.2d 906, 908 (Del. 2002).  Because we find that probation officers violated their clear statutory mandate, we do not reach any constitutional questions. *Downs v. Jacobs*, 272 A.2d 706, 707 (Del. 1970).

[2]    *See McAllister v. State*, 807 A.2d 1119, 1123 (Del. 2002).

2

independent analysis, and relied on information police received from an anonymous caller whose "tip" made it clear the caller had no personal information about Culver consistent with illicit drug activity.    Had probation officers independently analyzed the information consistent with their own agency's regulations, they would have concluded that no reasonable suspicion existed to search Culver or his dwelling.    We therefore hold that probation officers unlawfully searched Culver's dwelling and that the fruits of that unlawful search must be suppressed.  To hold otherwise would render 11 *Del.C.* § 4321 and the regulations promulgated under it meaningless.[3]  The Superior Court's denial of Culver's motion to suppress is **REVERSED**, his conviction is **VACATED** and the case is **REMANDED** for action consistent with this Opinion.

## *FACTS*

In October 2006, the Superior Court placed Culver on Level III probation following a September 2006 conviction on two counts of misdemeanor theft and one count of criminal mischief.  Culver's probationary conditions forbade him from possessing a weapon.

On October 16, 2006, Lt. Ogden of the Delaware State Police received an anonymous tip from an unknown caller with no past proven reliability.  The tipster

---

[3]    Super. Ct. Crim. R. 41(a) and (f) ("The procedure governing search and seizure shall be as provided by 11 Del. C., c. 23 or other applicable law."); *Mason v. State*, 534 A.2d 242, 253 (Del. 1987).

told Lt. Ogden that he suspected drug activity at Culver's home at 3210 Sapphire

Court. The caller also described Culver's physical characteristics and stated that

Culver drove a silver Mercedes Benz. According to Lt. Ogden's suppression

hearing testimony, the caller specifically said that "it was obvious that [Culver]

was involved in drug activity based on the volume of vehicles that would come to

his residence, stay there for a few minutes and leave." It is clear from Lt. Ogden's

testimony about the tip that the informant did not, in fact, have any personal

knowledge or contact with Culver to support any conclusion about Culver being

engaged in "drug activity." The caller provided Lt. Ogden with some easily

observable information such as a physical description of Culver, an address (which

turned out to be Culver's dwelling), and claimed that a silver Mercedes Benz with

a Pennsylvania license plate was being used for the drug activity. There is no

evidence that the caller had offered any basis from which an objective person could

conclude the caller had personal knowledge of Culver's activities.[4] Thus, at best,

the caller's "tip" could be viewed as conclusions the caller drew based solely on

observations from the street.

Despite the tipster's lack of personal knowledge, Lt. Ogden decided to

follow up and went to Culver's address that same day, October 16. Lt. Ogden

noticed a silver Mercedes Benz with a Pennsylvania license plate parked directly in

---

[4]     *See LeGrande v. State*, 947 A.2d 1103 (Del. 2008).

front of Culver's house. Before Lt. Ogden left, he noticed that two black males got out of a car – which Lt. Ogden concluded was a rental based upon his training and experience – and entered Culver's home. Approximately ten minutes later, the two men, Culver and a fourth person, left Culver's house and drove away in the silver Mercedes.

Lt. Ogden contacted Corporal Daniels of the Delaware State Police and requested his immediate assistance. Lt. Ogden remained in front of Culver's dwelling and Daniels followed Culver's car. After noticing that the Mercedes had tinted windows, Daniels requested and received authorization from Lt. Ogden to stop and search the Mercedes and the four occupants. The police officers used a K-9 to search the car and its occupants. The police found nothing incriminating.

Undeterred by an evidently flimsy and unreliable tip followed by an utterly fruitless search, Lt. Ogden contacted Patrick Cronin, Culver's probation supervisor, and informed Cronin that the State Police had received an anonymous tip. Cronin testified that Lt. Ogden "advised me that [Lt. Ogden] had received a tip that an individual at 3210 Sapphire was involved in drug activity, that he was doing surveillance there, and observed something that he had found to be suspicious, a car stop and identified [sic] one of the participants in the suspicious activity was on Level III probation, and identified him to me as Jeffrey Culver, the defendant." At this point, (1) Lt. Ogden had only received an uncorroborated

anonymous tip, not alleged to be based on personal knowledge, and (2) the police had searched (with the assistance of a K9) Culver's Mercedes, which was reportedly "involved in drug activity" – but that search yielded absolutely no evidence of drugs. While Cronin evidently knew of a "car stop," the record does not reveal whether Lt. Ogden told him State Police had searched Culver's car and found no incriminating evidence.

Shortly after Lt. Ogden contacted Cronin, Cronin contacted Melissa Roberts, the probation officer responsible for Culver's supervision. At this point, Cronin and Roberts decided to conduct an administrative search of Culver's home under Probation and Parole Procedure 7.19. Cronin testified they decided to conduct the search for three reasons: (1) Culver had failed drug tests during probation; (2) Culver had missed one curfew; and (3) Cronin had received information from a *"reliable source"*[5] that Culver possessed contraband. Cronin also explained the basis for those three reasons to search Culver's home.

First, Cronin testified that Culver's failed drug test occurred in September 2006, shortly after Culver entered probation. According to Roberts, by the time of Culver's third drug test, the levels of marijuana in Culver's system had been coming down, and by his fourth drug test, he tested negative. To Roberts, this

---

[5]    We assume the "reliable source" to be Lt. Ogden, who directed the unsuccessful search of Culver's Mercedes. Nothing in the record indicates any attempt by Cronin to seek information about the "tipster" that would confirm his or her reliability.

showed that Culver had stopped or at least decreased his use of marijuana. Nevertheless, Roberts considered it a factor in the analysis of whether to search Culver's dwelling. Second, Cronin testified that Culver had recently called in for his curfew about 20 minutes late. Third and finally, Cronin testified that Lt. Ogden "is my reliable source" and "he also gave me the characterization of the information that he had initially received in the form of the tip and his observations following the tip . . . ."[6] However, neither Cronin nor Roberts identified any known fact before Lt. Ogden's call that would have, in the ordinary course of business, triggered an administrative search.

Lt. Ogden testified that either he or another police officer remained in front of Culver's home until the probation officers searched it. Lt. Ogden testified that "I had had some conversations with Probation and was pretty certain that he going to be violated . . . ." Lt. Ogden "decided to stay [at Culver's house] so that in case, you know, any phone calls were made, somebody could come and take something out of the house, that kind of thing, so I just kind of stayed there until [probation officers] got there to secure it."

When the probation officers searched Culver's home, they found a loaded .357 Magnum revolver, hidden in a heating vent, and a detoxification kit

---

[6]    Cronin's "reliable source" evidently did not tell him that the State Police pretextual stop and search of Culver's Mercedes produced nothing consistent with the "tip" – or at least the record is silent in that regard.

7

commonly used to attempt to circumvent or defeat urine screening for drug use. Probation officers did not find any drugs or evidence of drug dealing.

Probation officers took Culver into custody for violating his probation. While he was in custody at the VOP Center, an arrest warrant issued for possession of a weapon by a person prohibited. Detective David Kline went to the VOP Center to arrest Culver on the weapons charge. In response to being handed the arrest warrant, Culver stated: "I know why you're here. They found my gun. I'm a rap promoter, and I have a lot of money, and the gun is for protection."

Before trial, Culver moved to suppress (1) the evidence found at his home as the product of an unlawful warrantless search and (2) his statement to Detective Kline as a violation of his Miranda rights. A Superior Court judge denied the suppression motion.[7] In April 2007, a Superior Court jury convicted Culver on the weapons charge.[8]

## DISCUSSION

We first address whether the Superior Court judge erred by denying Culver's motion to suppress the gun seized and his oral statement after probation officers searched his dwelling. The Superior Court judge concluded that the probation officers had reasonable suspicion to search Culver's dwelling and that reasonable

---

[7]    One Superior Court judge decided Culver's suppression motion. A different judge presided at trial.

[8]    Possession of a Deadly Weapon by a Person Prohibited. 11 *Del. C.* § 1448.

8

suspicion alone made the search lawful.   We review a denial of a motion to suppress evidence after an evidentiary hearing for abuse of discretion.[9]   To the extent the claim of error implicates questions of law, we review *de novo*.[10]

Culver contends that the search of his house was an improper administrative search under 11 *Del. C.* § 4321.[11]   That section provides:

> Probation and parole officers shall exercise the same powers as constables under the laws of this State and may conduct searches of individuals under probation and parole supervision in accordance with Department procedures while in the performance of the lawful duties of their employment and shall execute lawful orders, warrants and other process as directed to the officer by any court, judge or Board of Parole of this State.

Specifically, Culver argues that the probation officers' search violated Probation and Parole Procedure 7.19, promulgated under the authority granted by 11 *Del. C.* § 4321.   That Procedure requires:

> The officer and supervisor will hold a case conference using the Search Checklist as a guideline.   During the case conference the supervisor will review the "Yes" or "No" responses of the officer to the following search decision factors:
>
> (1)   Sufficient reason to believe the offender possesses contraband.
>
> (2)   Sufficient reason to believe the offender is in violation of probation/parole.

---

[9]    *McAllister v. State*, 807 A.2d 1119, 1122–23 (Del. 2002).

[10]    *Id.*

[11]    Culver also contends that the search violated both the U.S. and Delaware Constitutions. However, we do not address those contentions here. *See Williams*, 818 A.2d at 908; *Downs*, 272 A.2d at 707.

9

(3)    Information from a reliable informant, indicating
       offender possesses contraband or is violating the law.
(4)    Information from the informant is corroborated.

Moreover, that Procedure requires that probation officers assess the reliability of

their informants. Specifically, it requires:

> In evaluating reliability of information, was the information detailed,
> consistent, was the informant reliable in the past, and consider the
> reason why the informant is supplying information.

Finally, the Procedure cautions probation officers:

> Keep in mind that an administrative search is an authority assigned to
> Probation and Parole Officers and only Probation and Parole Officers
> may search the scene.  If the police get involved in the actual
> searching; the court has viewed this as probation and parole
> collaborating with the police and have thrown the evidence out of
> court.

In addition to the Probation and Parole Procedures, Delaware case law provides:

> [t]his Court has held that administrative searches of probationer
> homes require only reasonable grounds, even if the probation officers
> do not satisfy each technical requirement of the search and seizure
> regulations of the Department of Correction. The special nature of
> probationary supervision justifies a departure from the usual warrant
> and probable cause requirements for searches, but a search of a
> probationer's home must be reasonable.[12]

---

[12]    *Donald v. State*, 903 A.2d 315, 319 (Del. 2006).

10

A.    <u>**Reliability of the Anonymous Tip**</u>

Culver contends that the anonymous caller's tip was entirely speculative, lacked any corroboration, and that, in fact, the later search of Culver's car tended to discount the reliability of the anonymous caller's tip. We must decide whether the anonymous tip relayed to probation officers by Lt. Ogden, together with Lt. Ogden's personal observations while in front of Culver's home, provided the probation officers with reasonable suspicion to search Culver's home. We find that it did not.

In this circumstance, it was especially important for probation officers, pursuant to Procedure 7.19, to assess independently the reliability of the information provided to them. Although we have not strictly held probation officers to the official probation procedures,[13] we now hold that Procedure 7.19 makes it plain that probation officers must rationally assess the facts made known to them before reaching the critical conclusion that there is a reasonable basis to search a probationer's dwelling. Procedure 7.19 specifically requires:

> In evaluating reliability of information, was [1] the information detailed, [2] consistent, [3] was the informant reliable in the past, and [4] consider the reason why the informant is supplying information.[14]

The tip provided in this case fails all four parts of the test.

---

[13]    *Id.*

[14]    Probation and Parole Procedure 7.19(VI)(E)(3)(b).

First, we find that the information supplied by Lt. Ogden lacked detail. The tip Cronin received was not "first hand." The tipster had conclusorily surmised that Culver was involved with drug related activity because people were coming to and going from Culver's dwelling. Lt. Ogden did not relay, because he could not, that the tipster *personally* saw Culver or his guests with drugs. Nor could Lt. Ogden reasonably infer from the tip that the caller had any firsthand personal knowledge that Culver possessed or dealt drugs. In short, the unknown caller provided Lt. Ogden with nothing more than his speculative analysis of traffic patterns in front of Culver's home and the caller's conclusion that those patterns established that drug activity was afoot. So conclusory and devoid of any detail about criminal activity was the anonymous caller's analysis that it cannot provide any basis for determining that it was reliable.[15]

Lt. Ogden's surveillance added no additional information that corroborated a conclusion that there was drug activity. Lt. Ogden's surveillance demonstrated solely that, in his estimation, one of Culver's guests drove a rental car and that guest came to Culver's house to get a ride in Culver's Mercedes. Lt. Ogden suggested that, in his experience, people involved in drug activity typically use a rental car. That, however, without more, cannot create a reasonable suspicion of drug activity. To hold otherwise would allow probation officers to search a

---

[15]    *Jones v. State*, 745 A.2d 856, 870 (Del. 1999).

probationer's dwelling frequented by visitors anytime someone arrives for a visit in a rental car.   Therefore, we find that Lt. Ogden's communicating the tipster's conclusory opinion that Culver was involved in drug activity, did not provide sufficient detail to support a conclusion that there was a reasonable basis to suspect that Culver was involved in drug activity.

Second, Procedure 7.19 also requires that the probation officers consider whether the provided information is consistent.  Again, the caller's tip was neither internally consistent with its own inferred conclusion nor with the later independent investigation undertaken in an attempt to corroborate it.  Although the caller did provide verified information about Culver's address and a personal description of the car, that information was readily available by simply observing Culver from the street.  That information did not verify Culver's involvement in any illicit activity, however.  In *LeGrande v. State*, we held that an anonymous caller's tip was not sufficiently corroborated where:

> the police only corroborated the accused's identity, the location of his locked apartment, his probationary status, and that his neighbor was wanted.  Confirmations of these facts, which could be used to identify LeGrande, "[did] not show that the tipster [had] knowledge of concealed criminal activity."[16]

Likewise, in this case we find that the caller's description of Culver, and activity observable from the street, were not enough to provide a basis to find that the tip

---

[16]    *LeGrande v. State*, 947 A.2d at 1111 (quoting *Florida v. J.L.*, 529 U.S. 266, 272 (2000)).

provided reason to believe that Culver was engaged in illicit drug activity. The tip was based upon readily observable facts that demonstrated no special insight into illegal activity.

Even more importantly, the specific information purporting to form a basis to believe that Culver was involved with drugs was *inconsistent* with the further, follow up investigation. The caller specifically told Lt. Ogden that Culver used the silver Mercedes in connection with illegal drug activity, yet the K-9 search during the traffic stop yielded no drugs, paraphernalia or any incriminating evidence. If anything, the results of this search should have allayed suspicion that Culver was involved in drug activity.

Third, the State concedes that the informant was not past proven reliable. Although probation officers may typically rely on the information furnished them by police officers, Probation Procedure 7.19 Section VI.(E)(2) and (3) requires that the probation officers independently assess the reliability of the police officer's information. We recognize that, under Procedure 7.19 VI.(E)(2), probation officers could rely on representations based on a police officer's personal observations where the police officer has past experience with the probationer. However, probation officers cannot rely on police officers *vouching* for anonymous callers with no proven track record for supplying credible, reliable information. Rather, police officers must provide probation officers sufficient

14

facts so that the probation officers can independently and objectively assess the reasonableness of the inferences to be drawn from the caller's tip. If probation officers do not engage in an independent analysis of the reliability of facts supporting an "informant's" tip, they would contravene Procedure 7.19 Section VI(F)(3). The probation officers would thereby become essentially surrogates for the police, conveniently used when the police had no lawful authority to act on their own.

In this case, Lt. Ogden provided no evidence to probation officers that either he or the informant had any personal knowledge about Culver that would support a reasonable suspicion that Culver was currently involved with drug activity. The only evidence that Lt. Ogden provided to probation officers about Culver was a speculative hunch. The probation officers should have recognized that that information was deficient. Nothing about the tip demonstrated any personal connection between the caller and Culver and, thus, no credible opportunity for the tipster to have personal knowledge of illicit activity.[17] Instead, the probation officers should have concluded that this tip was entirely speculative, and should have recognized that Lt. Ogden had no independent basis to determine that Culver was involved in drug activity. Lt. Ogden had no regular contact with Culver that would have afforded him knowledge of Culver's personal habits. Nor did Lt.

---

[17]    *See Jones*, 745 A.2d at 870.

Ogden's personal observations demonstrate that Culver was involved with drugs. Indeed, the fruitless police search of Culver's Mercedes produced facts inconsistent with drug activity and plainly contradicted the caller's original information.[18]    Had the probation officers engaged in the independent inquiry required by Procedure 7.19, they would have recognized these flaws in the caller's tip and Lt. Ogden's information.

Fourth and finally, the Procedure instructs probation officers to consider the intent of the caller when he provided the information.  Here, we do not know why the anonymous caller provided the information.  It could just as reasonably have been a hoax, the offshoot of a personal vendetta, or random harassment.  We do not imply that this would be a fatal flaw in different circumstances.  However, absent any evidence that the tip was reliable based on the first three factors, the inability to assess the tipster's intent adds nothing to the equation.  Lt. Ogden's[19] intent, on the other hand, was obvious.  He wished the probation officers to search under circumstances where he and the State Police had no basis to undertake a

---

[18]    We find it troublesome that Cronin testified that he knew of a "car stop," but did not testify that he knew the State Police had searched Culver's car, alleged by the tipster to be used in the drug trade, but found nothing incriminating. The promulgators of the four part test for determining reliability of an anonymous tip might well have found that fact to be significant.

[19]    Fundamentally, it is obvious to all but the most naive of objective observers, that Cronin and Roberts considered Ogden, and not Ogden's information the source, to be the "reliable informant." Unfortunately, their "reliable" source of information neglected to tell them about the fruitless search of the Mercedes – an important fact in testing the consistency and reliability of the original tip.

search on their own.  In effect, Lt. Ogden's unanalyzed request, no doubt well intentioned, flatly contradicted Probation and Parole's policies.

After considering the four factors in Procedure 7.19, we conclude that the probation officers should have conducted an independent assessment of the caller's and of Lt. Ogden's information.  Instead, probation officer Cronin pronounced that Lt. Ogden was "my reliable source" and never examined the available information independently.  We therefore find that the probation officers improperly relied on conclusory, inconsistent, and unreliable information that cannot sustain a reasonable suspicion to search Culver's home.

**B.    Other Grounds for Reasonable Suspicion**

Although Lt. Ogden's tip may have provided the impetus for the probation officers to search Culver's home according to the probation officer's testimony, it was not the only reason for the search.  Probation officer Cronin testified the probation officers decided to conduct the search of Culver's home for *three* reasons:  (1) Culver had failed drug tests during probation; (2) Culver missed one curfew; and, (3) Cronin received information from Lt. Ogden that Culver possessed contraband.  Thus, the second question for us to decide is whether the probation officers had reasonable suspicion to conduct, and would in the ordinary course have concluded, that carrying out their duties properly required an administrative search of Culver's dwelling.

17

The State concedes that Lt. Ogden's tip catalyzed the immediate search of Culver's dwelling on October 16th. It, in effect, brought Culver up on their "radar screen." But, the State also contends that, even if probation officers could not search Culver based on Lt. Ogden's tip, probation officers still had independent and reasonable grounds to search Culver's home. The missed curfew and the failed drug tests were known to probation officers well before October 16, however, yet in the ordinary course of business had provoked no administrative search. Probation officers saw no need to depart from routine and search Culver's dwelling before they heard from Lt. Ogden. It is readily apparent that the probation officers did not believe that their regulations governing the supervision of probationers, given those two factors alone, would warrant an administrative search of Culver's dwelling. Only after the introduction of Lt. Ogden's unfounded tip did probation officers decide to depart from routine and conduct an administrative search. Because probation officers apparently concluded, in the ordinary course of business, that there was no basis to search Culver's dwelling by reason of a single episode twenty minute delay in calling in from curfew and for improving drug test results, those two additional reasons failed to provide the reasonable suspicion needed to justify an administrative search of Culver's home.[20]

---

[20]    *See Jones*, 745 A.2d at 870 ("Our finding that the 911 complaint alone did not suffice to establish reasonable and articulable suspicion requires us to search the record for any other

When examining whether the failed drug test and the missed curfew, without more, could support reasonable suspicion that would justify an administrative search, it is important to remember that both incidents had already occurred without probation officers ever considering a search of Culver's person or home before October 16. Nor is there any evidence of record that probation officers in fact intended to search Culver in the foreseeable future, much less on or before October 16. That leads us inescapably to the conclusion that the probation officers did not consider the failed drug test and the missed curfew to be sufficient reasons under their protocols to search Culver's home on October 16.

The question with which we are presented is not whether probation officers may have, hypothetically, at *some* time in the past or in the future concluded that reasonable suspicion existed to search Culver's home based on those two factors alone. Instead, the question is whether probation officers had reasonable suspicion to conduct *this* search on October 16. Without Lt. Ogden's call, we must conclude that the probation officers making this inquiry under the Department of Corrections mandated framework for analysis, would not have concluded there was a reasonable basis to conduct *this* search. Knowing that but for Lt. Ogden's call, the probation officers would not have searched on October 16, we find that Lt. Ogden's call, not an independent objective assessment of the information as

---

evidence the police might have possessed to support a finding of reasonable and articulable suspicion sufficient to detain Jones").

required by Procedure 7.19 is what precipitated the search. Because we have concluded that Lt. Ogden's information did not form a basis for reasonable suspicion, we conclude that the probation officers had no basis under their mandated framework for analysis to believe there was reasonable suspicion to search Culver's home on October 16.

The Probation and Parole Procedures, which empower and specify the duties of probation officers, do not specifically address whether the police may call upon probation officers to perform searches for which the police lack probable cause. The Court today divides, not because of constitutional debate, but instead over the conduct the Procedures authorize. The Procedures, or their enabling statute, 11 *Del. C.* § 4321, may, of course, be revised and amended to reflect the desired administrative or legislative policy if the result here does not align with the policymakers' views. At the very least, however, if the duly selected social policy choice is that probation officers are to use their probationary supervisory authority to search a probationer's dwelling where the police lack a reasonable basis to search, then that policy should be clearly, consciously, and openly adopted.

Without reasonable suspicion determined in compliance with their duties under Procedure 7.19, the unlawfully seized evidence and the gun and Culver's

oral statement inextricably linked to the seizure of the gun should have been suppressed.[21]

## CONCLUSION

Now, therefore, it is ordered that the judgment of the Superior Court is **REVERSED**, Culver's conviction is **VACATED** and the case is **REMANDED** for proceedings consistent with this opinion. Jurisdiction is not retained.

---

[21]      *See Caldwell v. State*, 780 A.2d 1037, 1051 (Del. 2001) ("Any evidence recovered or derived from an illegal search and seizure must be excluded from evidence. The exclusionary prohibition extends to the indirect as well as the direct products of such invasions."). Here, Culver's post-arrest statement was an indirect product of the illegally seized gun and must also be excluded.

**RIDGELY**, Justice, dissenting, with **HOLLAND**, Justice, joining:

The majority opinion excludes evidence obtained from an administrative search of a probationer triggered by an inconclusive tip from a police officer notwithstanding an alternative reasonable basis for the search upon independent grounds. Probation officers had independent evidence that Culver was using illegal drugs and had violated his curfew. Because the totality of the circumstances demonstrated that the probation officers' decision to conduct the search of Culver's residence was reasonable, we would affirm the denial of his motion to suppress the evidence obtained from that search. We would also affirm the denial of Culver's motion to suppress his statements.

### An administrative search requires<br>both substantial compliance and reasonableness

This Court has recognized that "probationers do not have the same liberties as ordinary citizens" and has held that "administrative searches of probationer homes require only reasonable grounds, even if the probation officers do not satisfy each technical requirement of the search and seizure regulations of the

Department of Correction."[22]    The special nature of probationary supervision

justifies a departure from the usual warrant requirement.[23]

Delaware law puts probationers under the supervision of the Department of

Corrections, whose probation officers "shall attempt in each case to effect a

satisfactory adjustment between the individual and the individual's needs and the

demands of society."[24]    By statute, probation officers "may conduct searches of

individuals under probation and parole supervision in accordance with

Departmental Procedures . . . ."[25]    The purpose of the Department of Corrections'

procedures governing searches of probationers "is to ensure that the Department

has sufficient grounds before undertaking a search."[26]    We do not require the

probation officers to satisfy "each technical requirement of the search regulations"

---

[22] *Donald v. State*, 903 A.2d 315, 319 (Del. 2006). *See generally Fuller v. State*, 844 A.2d 290, 291 (Del. 2004) ("To the extent that the officers departed from departmental guidelines, the departure did not render the search unconstitutional because of the curtailed rights of a probationer as compared with an ordinary citizen.").

[23] *Donald*, 903 A.2d at 319 ("The special nature of probationary supervision justifies a departure from the usual warrant and probable cause requirements for searches, but a search of a probationer's home must be reasonable).

[24] 11 *Del. C.* § 4321(b)(2). *See also* 11 *Del. C.* § 4301 ("[W]henever it appears desirable in the light of the needs of public safety and their own welfare, [a probationer] shall be dealt with, at restricted liberty in the community, by a uniformly organized system of constructive rehabilitation, under probation or parole supervision instead of in a correctional institution.").

[25] 11 *Del. C.* § 4321(d).

[26] *Fuller*, 844 A.2d at 292.

before conducting an administrative search of a probationer.[27]   Rather, we require

only substantial compliance[28] because under federal law[29] an administrative search

of a probationer's home requires only reasonable grounds.[30]

**There was substantial compliance
with Procedure 7.19**

Procedure 7.19 of State of Delaware Department of Correction Bureau of

Community Corrections Probation and Parole ("Procedure 7.19") provides the

guidelines and procedures for probation officers to apply when making an arrest or

search of a probationer,[31] and "will be used in the decision-making process for all

---

[27] *Id.*

[28] *See Donald*, 903 A.2d at 319; *Bunting v. State*, 907 A.2d 145, 2006 WL 2587074, at *5 (Del. Supr.).

[29] *See, e.g., United States v. Knights*, 534 U.S. 112, 121 (2001) ("We hold that the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house.  The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable."); *id.* ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."); *Griffin v. Wisconsin*, 483 U.S. 868, 878-80 (1987).

[30] *Majority Op., ibid.*; *Donald*, 903 A.2d at 319; *Fuller*, 844 A.2d at 292; *accord Word v. State*, 782 A.2d 268, 2001 WL 762854, at *3 n.8 (Del. Supr.) ("We also note the United States Supreme Court's ruling that probation supervision, including administrative searches of a probationer's property, permits a degree of impingement upon privacy that would not be constitutional if applied to the public at large.") (citing *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987)).

[31] The Superior Court has analyzed and quoted provisions from an older version of these guidelines, which were also labeled Procedure 7.19 in *State v. Harris*, 734 A.2d 629, 633-34 (Del. Super. 1998).  *See also Everett v. State*, 930 A.2d 928, 2007 WL 1850906, at *1 (Del. Supr.) (quoting from *Harris* a section from Procedure 7.19).  In his appendix, defense counsel

planned searches" absent exigent circumstances.[32]  There are five factors calling
for a review of the "yes" or "no" responses before conducting an administrative
search: (1) whether the probation officer has sufficient reason to believe the
offender possesses contraband; (2) whether the probation officer has sufficient
reason to believe the offender is in violation of his probation; (3) whether
information from a reliable informant indicates that the offender possesses
contraband or is violating the law;[33] (4) whether information from the informant is
corroborated; or (5) whether approval is obtained from the supervisor, manager, or
director.[34]

**Procedure 7.19 provides alternative grounds for
an administrative search**

The majority focuses on the third and fourth factors, which involve the
sufficiency of tips (anonymous or otherwise), as dispositive of the "substantially
complied" prong of the analysis.  We agree with the majority's analysis that the tip

---

provided us with the State of Delaware Department of Correction Bureau of Community
Corrections Probation and Parole Procedure 7.19 ("Procedure"), which have an effective date of
June 5, 2001.  Culver was subject to these procedures.

[32] Procedure 7.19(VI)(E).

[33] In evaluating this third factor, the guidelines provide four additional factors for the probation
officer to consider: (1) whether, if the offender was observed by another officer, that officer had
past experience with the offender, or a similar type circumstance; (2) whether the information
provided by the informant was reliable based on its detail, consistency, and past proven
reliability, and after considering the reason why the informant is supplying the information; (3)
whether the offender's activity indicates he may possess contraband, which may be supportive of
the informant's information; or (4) whether there were prior seizures of contraband from an
offender, prior violations of probation, and a conviction pattern.  Procedure 7.19(VI)(E)(3).

[34] Procedure 7.19(VI)(A)(6)(a).  There is no dispute that this fifth factor was met.

was insufficient under *LeGrande*.[35]  Regardless, there still must be consideration of the remainder of the checklist guidelines in Procedure 7.19, which the probation officers testified that they went through in making their decision to conduct an administrative search.  According to Robert's testimony during the suppression hearing, "Any one of those questions answered yes establishes sufficiency under 7.19 to conduct an administrative search."

Procedure 7.19 does not require information from a reliable informant as the *sine qua non* for a valid administrative search.  To the extent that the probation office receives an anonymous tip, this Court's opinion in *LeGrande* explains why corroboration of the concealed criminal activity in the tip needs more than just the confirmation of facts tending to identify a determinate person.[36]  Those requirements do not change when the tip comes indirectly from the police.[37]

The majority recognizes this point, but further interprets Procedure 7.19 to require police officers to "provide probation officers with sufficient facts so that the probation officers can independently and objectively assess the reasonableness

---

[35] *See LeGrande v. State*, 947 A.2d 1103 (Del. 2008).

[36] *Id.* at 1111.

[37] In this case, the police called and basically said to the probation officers "your probationer is on our radar even though we just conducted a search that turned up empty."  The probation officers then looked at Culver's file to determine the history of his supervision and whether they had a reasonable basis to conduct an administrative search.  Cronin testified that the decision to initiate the search was made by himself and Roberts, and he confirmed that nobody from the State Police had asked them to conduct the search.

of the inferences to be drawn from the caller's tip."[38]  Nothing in Procedure 7.19

requires this sharing of information and it is unnecessary given the well-established

standards for evaluating the credibility of tips.  Indeed, the United States Supreme

Court's reasoning for not creating such a requirement is persuasive: "[P]olice may

be unwilling to disclose their confidential sources to probation personnel."[39]

Further, "[i]n some cases—especially those involving drugs or illegal weapons—

the probation agency must be able to act based upon a lesser degree of certainty

than the Fourth Amendment would otherwise require in order to intervene before a

probationer does damage to himself or society."[40]

More importantly, the tip provided to the probation office—which was

undisputedly and conceded by the State as insufficient to generate either

reasonable suspicion or probable cause—was but one reason for the administrative

search in this case.  After concluding that the tip provided here should have

resulted in a negative response to the third and fourth factors of Procedure 7.19's

checklist requirement, the majority acknowledges that it still must evaluate the

other reasons given by the probation office and whether they provide a reasonable

basis for the probation officer to conduct an administrative search.  The majority

states "[w]ithout Lt. Ogden's call, we must conclude that the probation officers

---

[38] Majority Op., *supra*, at 14-15.

[39] *Griffin v. Wisconsin*, 483 U.S. 868, 879-80 (1987).

[40] *Id.* at 879.

making this inquiry under the Department of Corrections mandated framework for an analysis would not have concluded there was a reasonable basis to conduct *this* search."[41] We disagree.

An administrative search based upon either drug possession or drug consumption by a probationer stands on its own under either the first and second factors of Procedure 7.19 to justify an administrative search. As conceded by the majority, the officers answered "yes" to these factors and explained that two of the three reasons why they conducted the search were that (1) Culver had failed drug tests during probation and (2) that he had missed one curfew. The first reason supports answering "yes" to the first and second factors; the second reason supports answering "yes" to the second factor. Procedure 7.19 authorized an administrative search for either reason notwithstanding the police officer's "tip" and the majority's analysis of factors three and four. The officers testified that these were also reasons in addition to the tip that provided a sufficient basis for conducting the search and the Superior Court accepted their testimony. There is no dispute that the search itself was conducted properly. We find no abuse of discretion by Superior Court in concluding that the probation officers substantially complied with the procedural requirements for the administrative search.

---

[41] Majority Op., *supra*, at 19.

## The administrative search was reasonable

Even with substantial compliance with Department of Corrections procedures, there still needs to be a reasonable basis to conduct the administrative search to pass constitutional muster.[42]   A search of a probationer must be reasonable to be constitutionally sufficient.[43]   "Reasonableness is a flexible concept which must be considered with regard to the totality of the circumstances and with particular regard to the balancing of the needs of effective and reasonable law enforcement with the rights of privacy of the individual."[44]   To address how we should review the reasonableness of an administrative search, we need look no further than how reasonableness is measured in *every* other Fourth Amendment context.

In analyzing the issue under the Fourth Amendment, the reasonableness of a seizure,[45] pat down search,[46] a warrantless arrest,[47] an arrest warrant,[48] or search

---

[42] *See Fuller*, 844 A.2d at 292 ("Even if the officers did not follow each technical requirement of the search regulations before searching [the probationer], they did satisfy those that affect the reasonable inquiry required under the United States and Delaware Constitutions.").

[43] *See* Majority Op., *ibid.*; *Fuller*, 844 A.2d at 292; *Donald*, 903 A.2d at 319. *See also Griffin*, 484 U.S. at 878-880.

[44] *Williams v. State*, 331 A.2d 380, 382 (Del. 1975). *See also Purnell v. State*, 832 A.2d 714, 719 (Del. 2003) ("Reasonable and articulable suspicion is a less stringent standard than the probable cause standard and requires a quantum of proof that is less than preponderance of the evidence.").

[45] *E.g.*, *Jones v. State*, 745 A.2d 856, 863 (Del. 1999) (recognizing that under *California v. Hodari D.*, 499 U.S. 621 (1991), a Fourth Amendment seizure "does not occur until the officer uses physical force or the defendant submits to the authority of the officer"). *See also id.* at 869

warrant,[49] the reviewing court does not focus on the subjective motivations or intent of the particular person, but instead makes an objective determination of whether the totality of the circumstances support what is required under the law. Whether it was reasonable for probation officers to conduct an administrative search should be analyzed no differently.

There is no dispute regarding the information within Culver's file when the probation officers examined it. Culver's probation started September 5, 2006. His

---

("In our view, the question presented by Jones of when a seizure has occurred under Article I, § 6 of the Delaware Constitution requires focusing upon the police officer's actions to determine when a reasonable person would have believed he or she was not free to ignore the police presence.").

[46] E.g., Caldwell v. State, 770 A.2d 522, 531-32 (Del. 2001) (explaining that a Terry pat down search must be "founded upon a 'reasonable suspicion'" and while deference is given to an officer's experience and knowledge, "the facts which form the basis of the reasonable suspicion must 'be capable of measurement against an objective standard'").

[47] E.g., Coleman v. State, 562 A.2d 1171, 1177 (Del. 1989) ("The requisite analysis in determining the sufficiency of probable cause for a warrantless arrest is determined according to a 'totality of the circumstances' test.") (quoting Thompson v. State, 539 A.2d 1052, 1055 (Del. 1988)). See also O'Neil v. State, 691 A.2d 50, 54 (Del. 1997) ("[P]robable cause is measured by the totality of the circumstances through a case by case review of 'the factual and practical considerations of everyday life on which reasonable and prudent men act.'") (internal brackets omitted) (quoting State v. Maxwell, 624 A.2d 926, 928 (Del. 1993)); Bennefield v. State, 659 A.2d 227, 1995 WL 13425, at *1 (Del. Supr.) ("The existence of probable cause is determined by a review of the totality of the circumstances and the specific facts known to the police officers at the time of the arrest.").

[48] E.g., Thomas v. State, 467 A.2d 954, 956 (Del. 1983) ("For an arrest warrant to be valid, the issuing judicial officer must be presented with sufficient information to support an independent judgment that probable cause for the warrant exists.").

[49] E.g., LeGrande v. State, 947 A.2d 1103, 1107 (Del. 2008) ("An affidavit in support of a search warrant must, within the four-corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place.") (quoting Sisson v. State, 903 A.2d 288, 296 (Del. 2006)).

first drug test, administered on September 7 to establish a baseline for his drug levels, tested positive for cocaine (approximately 457 out of a 1000 point scale) and "over 100" for marijuana.[50] Roberts testified that results "over 100" indicated that Culver was "smoking in large quantities and usually at approximately a daily rate" and "actively smoking, if not on a daily basis, close to it." Culver again registered "over 100" on his second drug test, administered on September 28, a result which Roberts testified indicated to her that the marijuana levels in his system "stayed exactly the same."[51] The third drug test was on October 12 and Culver registered at 73. Roberts testified that this result demonstrated Culver was "probably smoking less frequently, but still pretty heavily" and that he was "actively smoking if [the result is] still greater than 50." On October 14, Culver missed his curfew, and on October 16, the probation office, prompted by the phone call by Lt. Ogden, examined Culver's file. The record also indicates that there was a fourth drug test which registered "negative," but a date for this test does not appear in the record. Because the search was on October 16, presumably this test was done during that four-day interval.[52]

---

[50] Roberts testified that the marijuana scale only measured up to 100.

[51] Roberts testified that the purpose for the second drug test at the end of the month was to determine "whether he is using less frequently or using more . . . ."

[52] Thus, in *four days or less*, Culver's test result did not just decline (as it had slowly done between drug tests two and three); it dropped from 73 to zero, or "negative." Roberts explained that the results "would obviously be at zero, if he had nothing in his system," but also testified

The majority agrees that under the ordinary totality of the circumstances approach, the question facing a trial court (and this Court on appeal) is whether an objective probation officer, examining these facts, would have had a reasonable basis to conduct the search that day. Instead of applying this objective analysis, the majority concludes that *these* officers did not have a reasonable basis to do so because *they* "would not have searched on October 16, but for Lt. Ogden's call." "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."[53]   Nor do subjective intentions play a role under an ordinary Fourth Amendment analysis of an administrative search of a probationer by probation officers.[54]

---

that use of a detoxification kit "can clean his system and make his urine screens come up negative for any illegal substance." "Actively smoking" to "negative" in four days objectively supported an inference that Culver *may* have used a detoxification kit to mask personal drug use. While a search is never justified by what is found, we note that a detoxification kit was discovered during the administrative search.

[53] *Whren v. United States*, 517 U.S. 806, 813 (1996). *See also State v. Prouse*, 382 A.2d 1359, 1364 (Del. 1978) ("[B]urdening a criminal defendant with the task of proving that a police officer acted with an illegal subjective intent would as a practical matter emasculate any limited rule concerning random stopping procedures, and in turn, emasculate Fourth Amendment rights."); *id.* ("We hold, therefore, that a random stop of a motorist *in the absence of specific articulable facts which justify the stop* by indicating a reasonable suspicion that a violation of the law has occurred is constitutionally impermissible and violative of the Fourth and Fourteenth Amendments to the United States Constitution.") (emphasis added).

[54] *United States v. Knights*, 534 U.S. 112, 122 (2001) ("Because our holding rests on ordinary Fourth Amendment analysis that considers all the circumstances of a search, there is no basis for examining official purpose."); *see also id.* at 122-23 (Souter, J., concurring) ("We now hold that law-enforcement searches of probationers who have been informed of a search condition are permissible upon individualized suspicion of criminal behavior committed during the probationary period, thus removing any issue of the subjective intention of the investigating officers from the case.").

In our view, the question is not what these particular officers did or did not choose to do before October 16; the question is whether it would have been reasonable for a probation officer, after examining Culver's file (and ignoring the tip from the police), to have decided to conduct an administrative search. We find it is objectively reasonable for probation officers to conduct an administrative search of the home of a probationer whose drug tests are positive for more than a month and which show him "actively smoking" just four days before. The subsequent drop from 73 to "negative" in the four-day interval between the third test and the search provides further reasonable support because of the probation officers' experience with drug detoxification kits. Culver also missed his curfew. The totality of these circumstances provided reasonable grounds to conclude that Culver possessed contraband and was in violation of his probation.

Notwithstanding Culver's claim that the test results were consistent with the residual effect of past and not current drug use, the trial judge accepted the probation officer's testimony concerning Culver's continuing drug use while on probation. Neither Culver nor the majority have demonstrated that these findings were clearly erroneous.[55] Accordingly, there was no abuse of discretion in the

---

[55] See *Chavous v. State*, -- A.2d --, 2008 WL 2527344, at *3 n.15 ("To the extent the trial judge's decision is based on factual findings, we review for whether the trial judge abused his discretion in determining whether there was sufficient evidence to support the findings and whether those findings were clearly erroneous.").

Superior Court's denial of Culver's motion to suppress the evidence seized during

the administrative search.[56]

### The statements Culver made were admissible

Because we find there was no abuse of discretion in denying the motion to

suppress, we must also address Culver's argument that the Superior Court abused

its discretion when it denied his motion to suppress the statements he made to

Detective Kline upon the presentment of the warrant for his arrest on the weapon

charge.  We review the Superior Court's denial of a motion to suppress after an

evidentiary hearing for abuse of discretion.[57]  To the extent that the claims of error

implicate questions of law, our review is *de novo*.[58]

---

[56] Culver's federal constitutional argument—often referred to as the "stalking horse" argument because it asserts that the probation officer is acting as an agent (a "stalking horse") of the police in order to circumvent the warrant requirement under the ruse of an administrative search—has been rejected as a matter of federal law. *See United States v. Knights*, 534 U.S. 112, 122 (2001) (holding that the official purpose of probation officers is not part of the Fourth Amendment analysis of the validity of an administrative search); *accord United States v. Williams*, 417 F.3d 373, 377 (3d Cir. 2005); *South Dakota v. Kottman*, 707 N.W.2d 114, 120 (S.D. 2005); *Riley v. Kentucky*, 120 S.W.3d 622, 628 (Ky. 2003).  Culver's argument under the Delaware Constitution has been waived because he has made only a conclusory claim before the Superior Court and this Court.  *See Ortiz v. State*, 869 A.2d 285, 291 n.4 (Del. 2005).

[57] *Ares v. State*, 937 A.2d 127, 130 (Del. 2007); *Donald v. State*, 903 A.2d 315, 318 (Del. 2006); *Norcross v. State*, 816 A.2d 757, 762 (Del. 2003); *Virdin v. State*, 780 A.2d 1024, 1030 (Del. 2001).

[58] *Ares*, 937 A.2d at 130; *Donald*, 903 A.2d at 318.  *See also Mcdonald v. State*, -- A.2d --, 2008 WL 1915174, at *8 (Del. 2008) (Noble, V.C., dissenting) ("Although it is said that this Court reviews a trial court's denial of a motion to suppress under an abuse of discretion standard, more accurately, the trial court's findings of historical fact are reviewed under the deferential clearly erroneous standard, but its conclusion as to probable cause, or more specifically its application of the law of search and seizure to those historical facts, is considered *de novo*.") (internal quotation marks and citations omitted).

Culver argues that the statement should have been suppressed because the officer did not advise Culver of his *Miranda*[59] rights before presenting him with the warrant. The State does not dispute that Culver was in custody, however it argues that the officer did not engage in the functional equivalent of interrogation, so *Miranda* warnings were not needed. We agree. The trial judge accepted the officer's testimony and found that his intention was not to question Culver, who made the statement voluntarily and not in response to any question, in order to exculpate himself. Culver's unforeseeable statement was admissible against him.[60] Accordingly, the Superior Court did not abuse its discretion in denying Culver's motion to suppress this statement.

We find no merit to Culver's arguments and would affirm the judgment of the Superior Court in all respects. We respectfully dissent.

---

[59] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[60] *See Tolson v. State*, 900 A.2d 639, 644 (Del. 2006) ("[A]n officer cannot be held responsible for an unforeseeable statement by the suspect. An interrogation only encompasses actions or words by the officer that he or she *should have known* would elicit an incriminating response.") (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

Not Reported in A.2d, 2007 WL 949491 (Del.Super.)

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware,
New Castle County.
STATE of Delaware
v.
**Samyra THOMAS**, Defendant.
ID. No. 0609003631.
Submitted: Jan. 3, 2007.
Decided March 29, 2007.

Upon Defendant's Motion to Suppress. **GRANTED.**
Shawn E. Martyniak, Esquire, Deputy Attorney General, Department of Justice, Wilmington, DE, for the State of Delaware.

Michal C. Hochman, Esquire, Monzack & Monaco, P.A., Wilmington, DE, for the Defendant.

### MEMORANDUM OPINION

JURDEN, J.

   *__1__ Before the Court is defendant **Samyra Thomas**' Motion to Suppress evidence that was seized as a result of an administrative search of her residence on September 9, 2006. The Defendant argues, *inter alia,* that the probation officer lacked the requisite "reasonable suspicion" to conduct an administrative search of her residence and, therefore, any evidence seized as a result is "fruit of the poisonous tree." For the reasons that follow, the defendant's Motion to Suppress is **GRANTED.**

### FACTS & PROCEDURAL HISTORY

   Officer Stoddard is assigned to "Operation Safe Streets," a joint task force of Wilmington city police detectives and Probation and Parole Officers. As part of his duties with Operation Safe Streets, Officer Stoddard patrols high crime areas, including the 400 block of North Monroe Street. At all times relevant hereto, his usual partner from Probation and Parole was Officer Dupont.

   Over a period of several weeks preceding the administrative search at issue here, Officer Stoddard, along with Officer Dupont (or sometimes another probation officer), patrolled the 400 block of North Monroe in an unmarked police vehicle. During this period, they repeatedly witnessed a young African-American male (later identified as Shawn Smallwood) either sitting or standing with a group of people outside a residence at 418 North Monroe Street. Each time Officer Stoddard and a probation officer drove by, they witnessed Smallwood quickly enter the dwelling at 418 North Monroe. And each time they drove by, they witnessed Smallwood peering out from behind the partially closed door. Officer Stoddard and Probation and Parole never witnessed *the defendant* outside 418 North Monroe.

   After observing Smallwood's behavior on four to six occasions over a period of several weeks, Officer Stoddard decided to "make contact" with Smallwood. He did this by saying to Smallwood, "you don't have to run inside the house and run away from us every time we're in the block." Smallwood did not verbally respond to this comment.[FN1] At this point, neither officer knew Smallwood's name, whether he was on probation, or whether he lived at 418 North Monroe Street.

FN1. Officer Stoddard testified that Smallwood grinned and laughed when Stoddard attempted to "make contact." Officer Dupont testified, "He may have grinned. I don't recall."

Officer Dupont then decided to investigate whether a probationer lived at 418 North Monroe. His investigation revealed that the defendant lived at 418 North Monroe and was on Level II probation for driving without insurance. Officer Dupont contacted the defendant's probation officer, Officer Staley. Upon reviewing the defendant's record, Officer Dupont learned that the defendant initially reported for probation on August 8, 2006. At that initial probation meeting, the defendant admitted to Officer Staley that she had smoked marijuana the day before. Officer Staley did not conduct an administrative search of the defendant's residence upon learning this information. Based on Smallwood's conduct and defendant's admission that she had smoked marijuana on August 8, 2006 prior to reporting for probation, Officer Dupont requested and received permission to perform an administrative search of the defendant's residence from his Supervisor, Officer Cronin. Officer Dupont obtained this permission despite the fact neither he nor Officer Stoddard nor the defendant's probation officer had ever witnessed *the defendant* loitering outside 418 North Monroe, ducking into the home when law enforcement drove by, or engaging in any criminal activity whatsoever. In fact, none of them knew if the defendant was at home on any of those occasions they saw Smallwood entering the dwelling.

**\*2** Officer Dupont's administrative search uncovered approximately 32.5 grams of cocaine, a loaded firearm, various ammunition, small dime-sized bags of marijuana, and empty bags with marijuana residue. The defendant was indicted for Trafficking in Cocaine, Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance, Use of a Dwelling for Keeping Controlled Substances, Possession of a Firearm During the Commission of a Felony, Endangering the Welfare of a Child, Possession of Drug Paraphernalia, and Possession of a Non-Narcotic Schedule I Controlled Substance.

### DISCUSSION

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by the United States Government. This fundamental right extends to individual state actions through the due process clause of the Fourteenth Amendment.[FN2] Article I, § 6 of the Delaware State Constitution provides similar protections to Delaware citizens, however, that protection has been held to be greater than that given by its federal counterpart.[FN3] These rights ensure that every citizen has a sphere of privacy that will not be invaded unreasonably by the State. Thus, law enforcement officers must obtain a judicial warrant or have sufficient probable cause to search someone's dwelling for contraband.[FN4] The warrant requirement is relaxed, however, when law enforcement seeks to search a probationer's dwelling.[FN5] In *Griffin,* the United States Supreme Court upheld a Wisconsin regulation that permitted warrantless searches as long as there were "reasonable grounds" to believe the probationer possessed contraband. In upholding the regulation, the Supreme Court found that probation and subsequent supervision were special needs of the State beyond normal law enforcement. Probation is meant to assure that the probationer serves a "period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." [FN6] As such, probationers do not enjoy the "absolute liberty" of ordinary citizens, but instead have "conditional liberty properly dependent on observance of special [probation] restrictions." [FN7] A warrant requirement would reduce the deterrent effect "expeditious searches" would create and put judges in a situation to determine the appropriate level of supervision for each probationer instead of an officer. [FN8] For those reasons, the Court justified relaxing the warrant requirement and allowing warrantless searches when probation officers follow a State regulation requiring "reasonable grounds."

FN2. *State v. Kelly,* 2003 Del.Super. LEXIS 257 at \*9, 2003 WL 21733014 (citing *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

FN3. *Id.*

FN4. *Word v. State,* 2001 Del. LEXIS 268, at *6, 2001 WL 762854, *aff'd,* 782 A.2d 268 (Del.2001).

FN5. *Griffin v. Wisconsin,* 483 U.S. 868, 873-75, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

FN6. *Id.* at 875.

FN7. *Id.* at 874 (The Court, however, also stated that the State's ability to search was not unlimited.).

FN8. *Id.* at 876

Delaware has adopted a similar law to that stated in *Griffin v. Wisconsin.* The pertinent Delaware Code section states as follows:

Probation and parole officers shall exercise the same powers as constables under the laws of this State and may conduct searches of individuals under probation and parole supervision in accordance with Department [of Corrections] procedures while in the performance of the lawful duties of their employment.... [FN9]

FN9. 11 *Del. C.* § 4321(d).

**\*3** Pursuant to this statute, the Department of Corrections (the "Department") has promulgated regulations outlining the procedures that probation and parole officers are to follow when arresting or searching a probationer. Section 7.19 of the Department's regulations outlines all of the procedures probation officers are to follow in executing an administrative search. Under § 7.19(VI)(A)(1), the officer must use an "Arrest-Search Checklist" for all arrests and searches, unless exigent circumstances exist. Before a search occurs, the probation officer reviews the checklist with a supervisor to determine if there are sufficient grounds for the search. Important parts of the search checklist include: (a) whether there is a sufficient reason to believe the probationer possesses contraband, and (b) whether there is a sufficient reason to believe the probationer is in violation of probation.

Further, the Department has outlined factors for each officer to consider before searching. Under § 7.19(VI)(E), the officer and supervisor should consider the same factors mentioned above from the checklist. Additionally, they should also consider any tips from informants, the reliability of the informant, and the conviction and violation history of the probationer, if any. These regulations are the same type that the United States Supreme Court upheld in *Griffin.*

In Delaware, probation officers are not required to fulfill each technical aspect of the Department regulations.[FN10] In *Fuller,* a probationer was pulled over in his car by probation officers after an anonymous tip, which claimed that Fuller possessed drugs, was corroborated by law enforcement. After being stopped, Fuller was found to be in possession of drugs.[FN11] Probation officers, without reviewing a checklist, searched his home pursuant to supervisor approval. The Supreme Court held that there were reasonable grounds to believe Fuller possessed more drugs at his home. The purpose of the regulations "is to ensure that the Department has sufficient grounds before undertaking a search. The individual procedures advance that goal but are not independently necessary, as demonstrated by the fact that the regulations explicitly state when the search checklist need not be used." [FN12] Because law enforcement had reasonable grounds in *Fuller,* the search fulfilled the reasonableness requirement under the Fourth Amendment and *Griffin.*[FN13]

FN10. *Fuller v. State,* 844 A.2d 290, 291-92 (Del.2004).

FN11. *Id.*

FN12. *Id.* at 292

FN13. *Id.*

If sufficient grounds exist, probation officers may also search a probationer who was not originally the target of the search.[FN14] In *Harris,* two probationers lived together. Probationer # 1 was the object of the search.[FN15] Law enforcement noticed expensive vehicles parked outside of the residence and received a tip that there was excessive activity at the residence. Further, Probationer # 2, the defendant, had a history of drug related convictions and violations of probation.[FN16] These circumstances provided reasonable grounds to search the defendant, although law enforcement originally targeted his roommate.[FN17]

FN14. *State v. Harris, 734 A.2d 629 (Del.Super.1998).*

FN15. *Id.* at 631.

FN16. *Id.* at 635.

FN17. *Id.*

**\*4** Based on the evidence presented, the Court concludes that Officer Dupont did not have sufficient grounds to believe that the Defendant possessed contraband or was violating probation pursuant to § 7.19 of the Department's regulations. The testimony establishes that: (1) the defendant lives in a high crime area, (2) Smallwood and a group of people, not including the defendant, were outside of her residence on four to six occasions, (3) each time officer Stoddard drove by, Smallwood entered the residence and watched through the slightly opened door, and (4) the defendant, a probationer, admitted to using marijuana on August 8th. These facts are simply insufficient grounds to support the search.

Living in a high crime area, without more, is insufficient to support an administrative search. There are thousands of people living in the city of Wilmington. Many live in high crime areas, and many are on probation and not committing crimes. People "hanging out" in front of a probationer's residence does not give Probation and Parole sufficient grounds to search the probationer's residence. Officer Stoddard admitted that it was common in Wilmington for people to be outside their houses and that sometimes those who are not engaged in illegal activity "hang out" in front of their houses. In this instance, both Officers Stoddard and Dupont admitted that they did not witness either Smallwood or the defendant committing a crime. Quickly entering a residence also does not provide sufficient grounds to conduct an administrative search. While the officers witnessed Smallwood entering the apartment and peering from behind the partially opened door, Smallwood's behavior could be attributed to a variety of causes, some of which are wholly unrelated to illegal activities. For example, Officer Dupont acknowledged that there are law abiding citizens who walk away from law enforcement simply because they do not want to have contact with any law enforcement. Viewed together, these facts do not provide grounds to conduct the administrative search. The defendant is not on probation for drug crimes. She has no convictions for drug crimes. Her criminal record consists of traffic offenses and some juvenile offenses. The defendant was never observed outside her residence. There was no evidence that the defendant was in her residence when Smallwood and the group were outside her residence. Officer Dupont was not the defendant's probation officer. The defendant's probation officer had not violated the defendant. At no time prior to this administrative search did anyone from probation and parole observe the defendant engage in any suspicious, much less illegal, activity. While law enforcement may search under a suspicion less certain than probable cause, some degree of certainty is needed before the defendant can be wholly divested of her Fourth Amendment rights. That threshold has not been met in this case.

### *CONCLUSION*

For the foregoing reasons, the Defendant's Motion to Suppress is **GRANTED**. All evidence seized as a result of the unreasonable administrative search is inadmissible.

**\*5 IT IS SO ORDERED.**

Del.Super.,2007.
State v. Thomas
Not Reported in A.2d, 2007 WL 949491 (Del.Super.)

END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-115-SLR |
| | : | |
| CHARLES A. WEBSTER, JR., | : | |
| | : | |
| Defendant. | : | |

**APPENDIX TO DEFENDANT'S ANSWERING BRIEF**

| | | |
|---|---|---|
| **Defendant's Exhibit 1** | **Bureau of Community Corrections Probation and Parole guidelines and procedures for using the Arrest-Search Checklist and in making arrests and searches.** | **pg. D1** |
| **Defendant's Exhibit 2** | **Probation and Parole contact notes for Charles A. Webster, Jr.** | **pg. D18** |
| **Defendant's Exhibit 3** | **Arrest Search Checklist dated 8/23/07 for Charles A. Webster, Jr.** | **pg. D51** |

.

# DEFENDANT'S EXHIBIT 1

D4

# DEFENDANT'S EXHIBIT 2

D18

# DEFENDANT'S EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,          :
                                   :
Plaintiff,                         :
                                   :
v.                                 :          Criminal Action No. 07-115-SLR
                                   :
CHARLES A. WEBSTER, JR.,           :
                                   :
Defendant.                         :
_____

## APPENDIX TO DEFENDANT'S ANSWERING BRIEF

| | | |
|---|---|---|
| **Defendant's Exhibit 1** | **Bureau of Community Corrections Probation and Parole guidelines and procedures for using the Arrest-Search Checklist and in making arrests and searches.** | **pg. D1** |
| **Defendant's Exhibit 2** | **Probation and Parole contact notes for Charles A. Webster, Jr.** | **pg. D18** |
| **Defendant's Exhibit 3** | **Arrest Search Checklist dated 8/23/07 for Charles A. Webster, Jr.** | **pg. D51** |

# DEFENDANT'S EXHIBIT 1

| STATE OF DELAWARE<br>DEPARTMENT OF CORRECTION<br><br>BUREAU OF COMMUNITY CORRECTIONS<br>PROBATION AND PAROLE | PROCEDURE NUMBER:<br>7.19 | PAGE NUMBER:<br>1 of 16 |
|---|---|---|
| | RELATED ACA STANDARD: 2-3159, 2-3160<br>  DOC POLICY:<br>  BCC POLICY:<br>  DPP POLICY: 7.11, 7.21 | |
| SECTION: 7 - SUPERVISION<br>ACTIVITIES | TITLE:  ARRESTS, SEARCHES AND<br>  ARREST-SEARCH CHECKLIST | |
| APPROVED BY DIRECTOR: | | EFFECTIVE DATE:<br>06/05/01 |

I.   AUTHORITY:     11 Del. Code, §1241, §1241, §1902, §4321,
                    §4334(b) and §4352(a).

II.  PURPOSE:       To provide guidelines and procedures for using the
                    Arrest-Search Checklist and in making arrests and
                    searches.

III. APPLICABILITY: All Probation and Parole Officers.

IV.  DEFINITIONS:

     ARREST-SEARCH CHECKLIST (Form #506): A form used to facilitate a case
     conference between the Officer, who is seeking an arrest or search
     action and his immediate Supervisor. The form contains the following
     sections; Arrest Decision Factors, Arrest Strategy, Decision to
     Search, and Search Strategy.

     ARREST: To deprive a person of his liberty by legal authority. Taking,
     under real or assumed authority, custody of another for the purpose of
     holding or detaining him to answer a criminal charge. Arrest involves
     the authority to arrest, the assertion of that authority with the
     intent to effect an arrest, and the restraint of the person to be
     arrested. All that is required for an ''arrest'' is some act by officer
     indicating his intention to detain or take person into custody and
     thereby subject that person to the actual control and will of the
     officer; no formal declaration of arrest is required.[1.]

     CONTRABAND: Any item that a offender may not have in their control or
     possession pursuant to the Court, the Board of Parole, state or federal
     law or the conditions of supervision (i.e. deadly weapon, illegal
     drugs), or evidence of violation of any law or regulation.

     DETENTION: To temporarily deprive a person of their freedom to depart
     the area based on reasonable suspicion. Refer to 11 Del. Code, §1902.

     EXIGENT CIRCUMSTANCES: An unexpected or urgent event which did not allow
     an opportunity for prior planning, and which requires immediate action
     to achieve a successful resolution. Exigent circumstances, that lead to
     arrests or searches without prior supervisory review must be clearly
     stated and documented in the incident report.

     FRISK: Contact of the outer clothing of a person to detect by the sense
     of touch whether a concealed weapon is being carried. A frisk is less

00000248


00000248

2

| STATE OF DELAWARE<br>DEPARTMENT OF CORRECTION<br>BUREAU OF COMMUNITY CORRECTIONS<br>PROBATION AND PAROLE | PROCEDURE NUMBER:<br>7.19 | PAGE NUMBER:<br>2 of 16 |
|---|---|---|
| | TITLE:   ARRESTS, SEARCHES AND<br>ARREST-SEARCH CHECKLIST | |

than a full-scale search.

<u>CONTACT WITH OFFENDER IN THE COMMUNITY:</u>

A probation and parole officer only has statutory authority to administratively search active probation and parole offenders. Officers have peace officer authority over citizens. The following guidelines apply to contact with individuals in the community:

1.  Probation and Parole Officers may detain any offender positively identified as such in order to determine the nature of their activity and whether or not they are complying with conditions of supervision.

2.  Probation and Parole Officers may not detain any other individual abroad unless there are reasonable grounds to suspect that the person is committing, has committed or is about to commit a crime. If this reasonable suspicion exists, a peace officer may demand of the person their name, address, business abroad and destination. If that person is positively identified as under active probation or parole supervision, they are subject to administrative search or other actions in accordance with Department of Correction policy and procedures.

3.  The Delaware Supreme Court has ruled that mere flight from a law enforcement officer is not a sufficient ground to detain an individual, absent reasonable suspicion already existing for a detention. Pursuit to enforce a detention may take place if:

    a.  The subject fleeing is actively on probation or parole supervision, OR

    b.  The subject fleeing is known to be the subject of an active warrant or capias, OR

    c.  Reasonable suspicion exists that the person fleeing presents an immediate threat to the community.

4.  When assisting police, at their request, in accordance with 11 Del. Code §1241, <u>Refusing to aid a police officer</u> and §1242, <u>Limitation of civil liability for aiding a police officer</u> you may render whatever assistance is necessary to effect an arrest, or prevent the commission of an offense.

<u>SEARCH</u>: An examination of a person's house or other buildings or premises, or of his person, or of his vehicle, etc. with a view to the discovery of contraband or illicit or stolen property, or some evidence of guilt to be used in the prosecution of a criminal action for some crime or offense with which he is charged.[1.]

<u>SEARCH INCIDENT TO ARREST</u>: A probation officer who has the right to arrest a person either with or without a warrant may search his person and the immediate area of the arrest for weapons.[1.]

00000249


00000249

3

| STATE OF DELAWARE DEPARTMENT OF CORRECTION BUREAU OF COMMUNITY CORRECTIONS PROBATION AND PAROLE | PROCEDURE NUMBER: 7.19 | PAGE NUMBER: 3 of 16 |
|---|---|---|
| | TITLE:  ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST | |

SEARCH, LIVING QUARTERS AND PROPERTY: A search of the offender's living quarters, which should be confined to the area actually occupied by the offender, and may include common areas such as kitchen, bathroom, living room, closets, curtilage and outbuildings to which the offender has common access, etc. and the offender's property, i.e. motor vehicle. Curtilage: Includes those outbuildings which are directly and intimately connected with the habitation and in proximity thereto and the land or grounds surrounding the dwelling which are necessary and convenient and habitually used for family purposes and carrying on domestic employment.[1]

SEARCH, PERSONAL: A search of a offender's person, including but not limited to, the offender's pockets, frisking the offender's body, examination of the offender's shoes and hat and an inspection of the offender's mouth. An Officer conducting the search must be of the same gender as the offender.

SEARCH WARRANT: An order in writing, issued by a justice or other magistrate, in the name of the state, directed to an officer, authorizing him to search for and seize any property that constitutes evidence of the commission of a crime, contraband, the fruits of crime, or things otherwise criminally possessed; or, property designated or intended for use or which is or has been used as the means of committing a crime.[1] A search warrant may also be used to search for the body of the offender.

1. References Black's Law Dictionary, 6th Ed.,1998.


V.   PROCEDURE INDEX:

A.   ARREST-SEARCH CHECKLIST
B.   ARREST DECISION FACTORS
C.   ARREST STRATEGIES
D.   ARREST PROCEDURES
E.   SEARCH DECISION FACTORS
F.   SEARCH STATEGIES
G.   SEARCH PROCEDURES.

VI.  PROCEDURES:

A.   ARREST-SEARCH CHECKLIST.

1.   The Arrest-Search Checklist form is to be used for all arrests and searches in the community; unless, exigent circumstances exist forcing the Officer into action. Use of exigent circumstances will be documented and scrutinized carefully by the agency. The officer must make every effort to contact his Supervisor, the Duty Supervisor, any other Supervisor, or any other supervisor in the chain-of-command prior to any actions

00000250


00000250

| STATE OF DELAWARE DEPARTMENT OF CORRECTION BUREAU OF COMMUNITY CORRECTIONS | PROCEDURE NUMBER: 7.19 | PAGE NUMBER: 4 of 16 |
|---|---|---|
| PROBATION AND PAROLE | TITLE:  ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST | |

being taken.

NOTE: If the officer has time to plan the arrest and request the assistance of other officers, then the officer should have time to contact supervisory staff for approval.

2. One half of the form is to be completed for planning arrest actions and the remaining half for planning searches. When planning an arrest, the form in this procedure will be referred to as a Arrest Checklist and when planning a search, the form will be referred to as a Search Checklist.

3. To complete the form for approval, the offender's name and address must be filled-in, appropriate blocks checked in the *Arrest Decision Factors* and *Arrest Strategy* area for an arrest action and/or the *Decision to Search* and *Search Strategy* areas for searches, All members of the arrest and/or search team will be listed, the officer must sign and date, and the supervisor must approve the action by signing, dating, and entering the time of approval.

4. The Arrest-search Checklist form expires 24 hours after the date and time the Supervisor signed the form; unless, the Supervisor extends the period by writing-in an expiration date, time, and initialing.

5. ARREST CHECKLIST:

   a. The officer and supervisor will hold a case conference using the Arrest Checklist as a guideline. During the case conference the supervisor will review the ''Yes'' or ''No'' responses of the officer to the following arrest decision factors:

      (1) Reason exists to believe offender is engaged or about to engage in a clear and substantial risk to the community or their self.
      (2) An active warrant or capias exists.
      (3) Offender has a capias history.
      (4) Offender likely to abscond.
      (5) Other factors justifying the arrest (list).

   b. The supervisor will review the ''Yes'' or ''No'' responses of the officer to the following arrest strategies:

00000251



00000251

| STATE OF DELAWARE DEPARTMENT OF CORRECTION BUREAU OF COMMUNITY CORRECTIONS PROBATION AND PAROLE | PROCEDURE NUMBER: 7.19 | PAGE NUMBER: 5 of 16 |
|---|---|---|
| | TITLE:   ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST | |

    (1) Supervisor, Manager, or Director notified.
    (2) Briefing held.
    (3) Superior force present to make arrest.
    (4) Personnel trained in arrest procedures, handcuffing techniques, and defensive tactics (If not, explain in the Arrest / Incident Report.
    (5) Police contacted to make the arrest.

6.  SEARCH CHECKLIST.

  a.  The officer and supervisor will hold a case conference using the Search Checklist as a guideline. During the case conference the supervisor will review the ''Yes'' or ''No'' responses of the officer to the following search decision factors:

    (1) Sufficient reason to believe the offender possesses contraband.
    (2) Sufficient reason to believe the offender is in violation of probation/parole.
    (3) Information from a reliable informant, indicating offender possesses contraband or is violating the law.
    (4) Information from the informant is corroborated.
    (5) Approval obtained from Supervisor, Manager, or Director.

  b.  The supervisor will review the ''Yes'' or ''No'' responses of the officer to the following search strategies:

    (1) Proper planning for search is completed.
    (2) Sufficient staff to search.
    (3) Individual responsibilities assigned.
    (4) Police called to provide search security.
    (5) Persons involved in search have been properly trained.
    (6) Arrangement made to secure contraband potentially seized.

7.  NOTIFICATION OF THE MANAGER: Either the Probation and Parole Officer or the Supervisor may notify the Manager.

  a.  The Manager will be notified on all arrests occurring after 5:00 p.m. and prior to 8:00 a.m. This notification includes other times the probation

00000252



00000252

6

| STATE OF DELAWARE<br>DEPARTMENT OF CORRECTION<br>BUREAU OF COMMUNITY CORRECTIONS | PROCEDURE NUMBER:<br>7.19 | PAGE NUMBER:<br>6 of 16 |
|---|---|---|
| PROBATION AND PAROLE | TITLE:    ARRESTS, SEARCHES AND<br>ARREST-SEARCH CHECKLIST | |

office is closed; such as, on the weekends and holidays.

   b. The Manager will be notified when a search warrant is to be executed in conjunction with the arrest. A copy of the search warrant will be made available for the manager's review before the search warrant is submitted to the Court for approval.

   c. The Manager will be notified of all Administrative Warrant arrests immediately, but no later than one hour after the offender was apprehended. The Operation Safe Streets (OSS) Unit is an exception to this requirement.

   d. The Manager will be notified on any injuries or any damage to property immediately, but no later than one hour after the injury or damage occurred.

8. POST ARREST AND/OR SEARCH REQUIREMENTS.

   a. No later than one (1) duty day following the arrest and/or search; the officer will complete an Arrest/Incident Report and attach the completed Arrest-search Checklist.

   b. Any event involving the use of force, injury, or lost, damaged or stolen property will be reported on the Arrest / Incident Report before the end of the employee's shift that day. All employees involved in or witness to an incident will also be required to complete an Arrest / Incident report before the end of their shift that day.

   c. The Checklist and the Arrest/Incident Report will be completed in triplicate (one for the Manager, one for the Supervisor and one for the offender's case file).

   d. The Supervisor will review, comment if necessary, and forward the report to the Manager.

9. The Manager will begin the agency review process and will forward all copies of the Arrest/Incident reports and the Checklist to the appropriate person(s) for their review.

B. ARREST DECISION FACTORS.
Absent exigent circumstances, the decision to arrest an

00000253



00000253

| STATE OF DELAWARE DEPARTMENT OF CORRECTION BUREAU OF COMMUNITY CORRECTIONS PROBATION AND PAROLE | PROCEDURE NUMBER: 7.19 | PAGE NUMBER: 7 of 16 |
|---|---|---|
| | TITLE:  ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST | |

offender should only be made after discussing the matter with your supervisor, or in their absence, another unit supervisor or follow the chain of command. The Arrest Checklist will be used in the decision making process for all community arrests. Generally, the following factors should be considered when deciding whether to arrest an offender:

1. The Officer has knowledge, or reason to believe that an offender is engaged, or about to engage in conduct, which presents a clear risk to the community, self or others.

2. There is an existing warrant or capias for a violation of supervision or for traffic or criminal offenses. The warrant or capias must be verified with the agency of issue.

3. The offender is known to have a significant capias history, which has resulted from failures to appear in court.

4. There is evidence that the offender has deliberately absconded or is about to abscond from supervision. The fact that the offender has only missed scheduled office visits is insufficient evidence in itself; there are other factors that should be considered in making this decision.

5. The Division of probation and parole recognizes every arrest situation cannot be defined. Officers faced with an exigent circumstance, a sudden unexpected or urgent situation must use sound judgment, common sense, experience, and apply training techniques in dealing with these situations.

C.  ARREST STRATEGIES.

1. Prior to approving any arrest a Supervisor, Manager, or the Director must review the arrest decision factors.

2. A briefing will be held with staff involved in the arrest to cover the following minimum information:

   a. Identify the subject of the arrest, display a photo if possible, mention any dangerous aspects of the offender, and any criminal history that could affect the officers' actions or safety.

   b. Identify the location of the arrest, description of the exits, obstructions, and if the offender is likely to have visitors at the time of the arrest.

00000254



00000254

8

| STATE OF DELAWARE<br>DEPARTMENT OF CORRECTION<br>BUREAU OF COMMUNITY CORRECTIONS<br>PROBATION AND PAROLE | PROCEDURE NUMBER:<br>7.19 | PAGE NUMBER:<br>8 of 16 |
|---|---|---|
| | TITLE:  ARRESTS, SEARCHES AND<br>ARREST-SEARCH CHECKLIST | |

    c. Verify that all arrest team members know each other by sight, verify radio identification signs, and test communications and all equipment before the arrest.

    d. Identify assignments at the arrest scene for front door, back door, and transportation of the offender.

    e. After the arrest, a debriefing is helpful for parties in future actions.

3. Assure that superior force is present for the arrest. It is safer to have more officers than too few.

4. Make sure all arrest team members are trained in arrest procedures, handcuffing techniques, and defensive tactics. Exceptions to this must be justified in the Arrest/Incident Report.

5. Contact the appropriate police communication center and advise them of the location of the planned arrest. Request uniformed assistance if available. The officer's uniform is an instant sign of authority to the offender and provides a margin of safety for the other arrest team members.

D. ARREST PROCEDURES.

1. OFFICER SAFETY IS THE FIRST CONSIDERATION for arrests in the office or in the community.

    a. Officers must have successfully completed training in arrest procedures.

    b. Officers will not deliberately or unnecessarily place themselves in situations that they cannot safely manage.

    c. Superior force must be present to demonstrate to the offender that they have no chance to successfully resist or escape. A presence of 2 officers to 1 offender will in most cases create this impression and is the minimum number of officers required to make a planned arrest. The number of officers to an offender will increase depending on the history, mental, and emotional state of the offender.

    d. If two officers or more are involved in an arrest, at least one of those officers must have completed their

00000255



00000255

9

| STATE OF DELAWARE<br>DEPARTMENT OF CORRECTION<br>BUREAU OF COMMUNITY CORRECTIONS<br>PROBATION AND PAROLE | PROCEDURE NUMBER:<br>7.19 | PAGE NUMBER:<br>9 of 16 |
|---|---|---|
| | TITLE:    ARRESTS, SEARCHES AND<br>ARREST-SEARCH CHECKLIST | |

probationary period.

2. Verify the warrant or capias is still outstanding before making the arrest. A copy will be provided to the police officer.

3. Notify your immediate Supervisor, or in his absence follow the chain of command, to review the Arrest Checklist. Upon approval, notify the police.

4. All field contacts with offenders are in accordance with the definition titled, CONTACT WITH OFFENDER IN THE COMMUNITY.

5. IN-OFFICE ARREST:
   Plan the in-office arrest without relying on police assistance or the assistance to arrive in a timely manner.

   a. Obtain supervisor approval prior to arrest.

   b. Select an arrest team consisting of a minimum of 2 officers, one of which must have completed their probationary period.

   c. Escort the offender to an isolated area; such as, your office. You want to arrest the offender away from the general public, other offenders, and relatives of the offender that may interfere with the arrest and may create a dangerous situation.

   d. Inform the offender he is under arrest, handcuff the offender, and search the offender for weapons. Seize all weapons (including a legal pocketknife) as evidence. Weapons will not be accepted at the prison with the offender's other property.

   e. Place the offender in the temporary holding cell, if available, and post an officer to guard the prisoner. If the holding cell is not available and the prisoner is handcuffed, then a minimum of one officer will need to stay with the offender in an isolated area.

   f. If police are not responding, then transport the offender to the prison or court in accordance with the procedure for transporting prisoners.

6. In approved circumstances or an emergency, which has previously been defined as a sudden, unexpected urgent situation, Officer's may arrest an offender without a

00000256


00000256

| STATE OF DELAWARE DEPARTMENT OF CORRECTION BUREAU OF COMMUNITY CORRECTIONS PROBATION AND PAROLE | PROCEDURE NUMBER: 7.19 | PAGE NUMBER: 10 of 16 |
|---|---|---|
| | TITLE: ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST | |

previously issued warrant or capias. In these cases, the Administrative Warrant form should be used for the violation of probation or parole.

7. If the arrest was made using an Administrative Warrant, the Officer must notify the Court or the Board of Parole <u>as soon as possible</u> and submit a report to the appropriate jurisdiction with a copy of the Administrative Warrant.

8. Once an arrest has been completed, the Officer of record is responsible for completing an Arrest / Incident Report. A copy of the Arrest-search Checklist and a copy of the capias or warrant will be submitted with the Arrest/Incident Report.

9. A search of the offender will be made immediately after the offender has been restrained. The search will be conducted by an officer of the same gender.

10. Arrests in the community should be made with the assistance of law enforcement officers, if available. In situations when police officers cannot be contacted prior to making an arrest, the DECIDING FACTORS should be:

    a. The offender's threat to the community.

    b. Officer safety.

11. Officers will not engage in any vehicle pursuits with another vehicle. If an offender succeeds in escaping, contact the police, and provide them as much information as possible regarding a description of the offender, his method of transportation, etc.

12. The Division recognizes that pursuing individuals on foot may be necessary at times. Before engaging in a foot pursuit officers should apply good judgment, common sense, and rely on training, as foot pursuits present a greater risk to the officer's safety. Absent exigent circumstances, no less than two officers will be involved in a foot pursuit or one officer with a police officer. Officers should consider the following factors when engaging in a foot pursuit:

    a. The foot pursuit is in accordance with the definition titled, CONTACT WITH OFFENDER IN THE COMMUNITY.

    b. Officers may not engage in a foot pursuit; unless, they are properly identified as a probation officer.

00000257



00000257

11

| STATE OF DELAWARE DEPARTMENT OF CORRECTION BUREAU OF COMMUNITY CORRECTIONS PROBATION AND PAROLE | PROCEDURE NUMBER: 7.19 | PAGE NUMBER: 11 of 16 |
|---|---|---|
| | TITLE:  ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST | |

Proper identification includes a clearly marked shirt, jacket, or badge. Officers should also make a verbal identification of themselves where appropriate during the chase. Your instant identification is a safety issue; especially, in cases where a police officer, who is responding to the pursuit, or a citizen in the area would not be able to distinguish you from the offender.

c.  Consider the risk of the area in which the pursuit takes place and your distance from your vehicle.

d.  During the foot pursuit, the officers should consider remaining within communication of each other in order that superior force is present at the moment of apprehension.

e.  Officers should consider communication difficulties and the potential lack of back-up available to them. If manpower is present, one officer should remain with the vehicle in order to track the chasing officers and expedite their recovery and the removal of the offender from the area.

f.  Officers are prone to injury during chases; especially chases in the evening hours when obstacles, clothing lines, and other debris may trip the officer.

g.  If an officer becomes injured during the chase; another officer will cease chasing immediately in order to protect and render aid to the officer.

13. Transportation of offenders without police assistance is the responsibility of the arresting Officers.

14. Where to transport the prisoner.

a.  For all Administrative Warrant arrests for probationers will be taken to the court having jurisdiction over the offender. If the court is closed, the prisoner will be taken to the appropriate prison facility.

b.  For all Administrative Warrant arrests for parolees will be taken directly to the appropriate prison facility. There is no right to bail for parole violators. Keep in mind that in all parole cases stemming from a technical violation will require a Preliminary Hearing be held within 10 days.

00000258



00000258

| STATE OF DELAWARE DEPARTMENT OF CORRECTION BUREAU OF COMMUNITY CORRECTIONS PROBATION AND PAROLE | PROCEDURE NUMBER: 7.19 | PAGE NUMBER: 12 of 16 |
|---|---|---|
| | TITLE:  ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST | |

    c. For other warrant or capias arrests, not involving an Administrative Warrant, the probationer or parolee will be taken to the police agency issuing the warrant or the highest court of jurisdiction issuing the capias. If the court is closed, the offender will be taken for arraignment to the nearest open J.P. Court.

    d. For all Rule 9 Warrants (also known as True Bills or Indictments), the prisoner will be taken to the investigating police agency or if the police agency cannot be identified, to Superior court if open or to the nearest open J.P. Court.

E. SEARCH DECISION FACTORS.
Absent exigent circumstances, the decision to search an offender or his living quarters should only be made after discussing the matter with your supervisor, or in their absence, another unit supervisor or follow the chain of command. The Search Checklist will be used in the decision-making process for all planned searches. Generally, the following factors should be considered when deciding whether to search.

1. The Officer has knowledge or sufficient reason to believe the offender possesses contraband.

2. The Officer has knowledge or sufficient reason to believe the offender is in violation of probation or parole.

3. There is information from a reliable informant indicating the offender possesses contraband or is violating the law. The following are things to consider when evaluating information received:

    a. Was the offender observed by another officer, does an officer have past experience with the offender, or a similar type circumstance.

    b. In evaluating reliability of information, was the information detailed, consistent, was the informant reliable in the past, and consider the reason why the informant is supplying information.

    c. The offender's activity indicates he may possess contraband, which may be supportive of the informant's information.

00000259



00000259

13

| STATE OF DELAWARE<br>DEPARTMENT OF CORRECTION<br>BUREAU OF COMMUNITY CORRECTIONS<br>PROBATION AND PAROLE | PROCEDURE NUMBER:<br>7.19 | PAGE NUMBER:<br>13 of 16 |
|---|---|---|
| | TITLE:    ARRESTS, SEARCHES AND<br>ARREST-SEARCH CHECKLIST | |

      d.  Prior seizures of contraband from an offender, prior Violation of Probation, and conviction pattern.

   4.  The information from the informant is corroborated.

   5.  Approval for the search has been obtained from a Supervisor, a Manager, or the Director. If approval was not obtained prior to the search, list the exigent circumstances on the Search Checklist requiring you to proceed with the search.

F.  SEARCH STRATEGY.
Prior to any search, a substantial amount of planning, preparation, and testing of equipment is required for officer safety.

   1.  Is there sufficient staff to do the search. The amount of staff required will vary with the location of the place to be searched, the number of exits, the size of the building or area, and the number of occupants inside.

   2.  Assign officers to individual responsibilities. As an example, consider the following assignments to be covered in a large search operation and that some officers will have multiple assignments:

      a.  A team leader with no task assignment and a relief person to fill-in for positions vacated for various reasons including injury.

      b.  Front door, back door, windows on the side of the building, and perimeter security.

      c.  A communications officer during the search.

      d.  Officers assigned to search the residence and a recorder to log names of persons in the house and to record any evidence discovered. These assignments must be Probation and Parole Officers.

      e.  Security of the scene and of any residents and/or prisoners inside the building.

      f.  Transportation officers.

      g.  Consider extra officers in the area for backup for emergencies that may arise.

   3.  Keep in mind that an administrative search is an authority

00000260


00000260

14

| STATE OF DELAWARE DEPARTMENT OF CORRECTION BUREAU OF COMMUNITY CORRECTIONS PROBATION AND PAROLE | PROCEDURE NUMBER: 7.19 | PAGE NUMBER: 14 of 16 |
|---|---|---|
| | TITLE:   ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST | |

assigned to Probation and Parole Officers and only Probation and Parole Officers may search the scene. If the police get involved in the actual searching; the court has viewed this as probation and parole collaborating with the police and have thrown the evidence out of court. Police may handle security, communications, and transportation roles.

4.  Proper planning for the search is completed.

5.  Persons involved in the search have been properly trained.

6.  Arrangements made to secure contraband potentially seized.

G.  SEARCH PROCEDURES.

1.  THERE ARE TWO TYPES OF SEARCHES:

    a.  Search Warrants may be obtained and executed according to the provisions of 11 Del. Code, Chapter 23. Search warrants are very detailed and will not be covered in this·procedure.

    b.  Administrative searches may be a personal search physically of the probationer or parolee and/or a search of the offender's living quarters, common areas, surrounding property, and automobile(s).

2.  All planned searches require the completion of a Search Checklist and if appropriate an Arrest Checklist and the approval of a supervisor or in his absence another Supervisor, a Manager, or the Director.

3.  COMMON ELEMENTS FOR ALL ADMINISTRATIVE SEARCHES:

    a.  Officers will strive to preserve the dignity of offenders.

    b.  A probation and parole officer will be present of the same gender as the offender.

    c.  If any items of the offender or other property are damaged pursuant to a search, the owner may file a complaint with the Director.

    d.  The offender will be provided a written Property Receipt for all items seized during the search (see *Evidence or Seized Property* procedure 7.25).

00000261


00000261

15

| STATE OF DELAWARE DEPARTMENT OF CORRECTION BUREAU OF COMMUNITY CORRECTIONS PROBATION AND PAROLE | PROCEDURE NUMBER: 7.19 | PAGE NUMBER: 15 of 16 |
|---|---|---|
| | TITLE:    ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST | |

e. After the search, an Arrest / Incident Report will be completed within one duty day. The report should include as a minimum the facts leading up to the search, justification for the search, items recovered, damage to property, force used, injuries, and any new charges. If force was used, damage to property, or there were injuries involved, a report will be completed immediately prior to the end of the officer's shift that day. All other officers will also be required to submit a report immediately listing what they witnessed.

4.  PERSONAL SEARCHES.

a. Probation and Parole Officers are not permitted to conduct strip searches or body cavity searches.

b. Personal searches will be conducted when an offender is taken into custody. Personal searches will be conducted by members of the same gender. When this is not possible due to exigent circumstances, a frisk for weapons is permitted for officer safety.

c. Two officers must be present for personal searches; unless, exigent circumstances exist for officer safety.

5.  SEARCHES OF LIVING QUARTERS AND PROPERTY.

a. The assistance of a uniformed law enforcement officer(s) is recommended for officer safety.

b. Uniformed officers are to provide security and should not assist in the search.

c. The offender may be present for the search, except when safety or custody considerations, lack of availability, or other extenuating circumstances inhibit this.

d. During the search, officers shall disturb the effects as little as possible.

e. Care should be taken to prevent infringing the rights of other occupants of the residence.



| STATE OF DELAWARE DEPARTMENT OF CORRECTION BUREAU OF COMMUNITY CORRECTIONS PROBATION AND PAROLE | PROCEDURE NUMBER: 7.19 | PAGE NUMBER: 16 of 16 |
|---|---|---|
| | TITLE:    ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST | |

Delete Procedure 7.13, Arrest Checklist
Delete Procedure 7.14, Arrests
Delete Procedure 7.18, Search Checklist
Revise Procedure 7.19, Searches. New title is: *ARRESTS, SEARCHES AND ARREST-SEARCH CHECKLIST*. Effective: 06/05/01

00000263

00000263

# DEFENDANT'S EXHIBIT 2

## Contact Notes

Date: 06/12/2008

SBI#          : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution  : DO56 New Castle Probation and Parole

| | | |
|---|---|---|
| Contact Type: Telephone From | Date: 03/27/2008 | Time: 11:25 |

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
C Carpenter reports P is in custody and will remain there, teleconference scheduled for
4/1 to request change in counsel, believes no court date has been scheduled @ this
time.

Relation                          Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: Telephone From | Date: 03/26/2008 | Time: 11:41 |

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
C. Carpenter reports P is still detained, left voice mail for federal prosecutor to
call him, will call this officer back once he gets an update on P's status.

Relation                          Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: Telephone To | Date: 03/26/2008 | Time: 09:40 |

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Craig carpenter ▓▓▓▓▓left voice mail requesting update on P-if he went to trial
this month and if so, need documentation if sentenced. left phone # and fax

Relation                          Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: Telephone From | Date: 01/16/2008 | Time: 12:34 |

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
C. Carpenter left voice mail today @ approx 12:18 reporting P is still in federal
custoday, trial scheduled for March. may have plea prior

Relation                          Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: Telephone To | Date: 01/15/2008 | Time: 16:12 |

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Craig carpenter-left voice mail, requesting update on P's federal case.

Relation                          Name (L,F,M,S)

00000170

<u>Contact Notes</u>

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: NCIC Check                              Date: 01/10/2008    Time: 20:52

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Wanted w/out limitations-full extradiction-SCNC

Relation _____ Name (L,F,M,S) _____

Contact Type: CJIS Check                              Date: 01/10/2008    Time: 20:48

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
VOP capias from 9/26/07 still active: SCNC $50,000 cash bail

Relation _____ Name (L,F,M,S) _____

Contact Type: General Comments/PO Notes              Date: 01/10/2008    Time: 20:32

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
This officer was on FMLA from 11/15/07-01/1/08.  Returned to duty on 01/02/08

Relation _____ Name (L,F,M,S) _____

Contact Type: Written Report                         Date: 10/02/2007    Time: 14:00

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
received signed vop report, $50,000 cash bail. P should be held until court can sort
this out.

Relation _____ Name (L,F,M,S) _____

Contact Type: Violation Report                       Date: 09/07/2007    Time: 18:05

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
DACS NOTIFICATION : VIOLATION REPORT # 237389 has been created on this offender

Relation _____ Name (L,F,M,S) _____

Contact Type: NCIC Check                             Date: 09/07/2007    Time: 15:40

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____ Name (L,F,M,S) _____

---

00000171

00000171

20

**Contact Notes**                          Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: CJIS Check                        Date: 09/07/2007      Time: 15:33

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
On 8/15/07, P cited by WPD for Operation of Unregistered MV. Offense occurred on
8/15/07. Pending in JP Court 20. Arraignment scheduled for 9/10/07

Relation _____      ____ Name (L,F,M,S) _____ _____

---

Contact Type: Telephone To                      Date: 08/30/2007      Time: 10:47

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Left voice mail requesting D. McCann to call this officer to discuss P's case in
federal court

Relation _____      ____ Name (L,F,M,S) _____ _____

---

Contact Type: Correction to Case Notes          Date: 08/30/2007      Time: 10:45

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Doug McCann's number is ▓▓▓▓▓▓▓▓▓▓

Relation _____      ____ Name (L,F,M,S) _____ _____

---

Contact Type: Telephone To                      Date: 08/30/2007      Time: 09:57

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Craig Carpernter-inform him per his request faxed him pre-sentence report in P's file
few minutes ago. Doug mccann is federal prosecutor handling P's case. ▓▓▓▓▓▓▓▓

Relation _____      ____ Name (L,F,M,S) _____ _____

---

Contact Type: Telephone From                    Date: 08/29/2007      Time: 15:30

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Craig carperter reports P was charged w/ Armed Criminal Offender last night-only
charge, indicted Federally. No bail. Facing 15yrs to life

Relation _____      ____ Name (L,F,M,S) _____ _____

00000172



00000172

## Contact Notes

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution  : DO56 New Castle Probation and Parole

---

Contact Type: Telephone To                              Date: 08/29/2007    Time: 12:26

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
returned craig carpenter's phone call for fed. ████████ p charged w/Felon in
Poss. of firearm. has detention hearing today.

Relation                            Name (L,F,M,S)

Contact Type: E-Mail                              Date: 08/24/2007    Time: 13:31

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Mr. Webster was taken into Federal Custody by ATF and they will be charging.  Please
disregard and void the CSS Admin Warrant faxed over to Safe Streets Court this morning.


Thanks,


Robert A. Willoughby, Jr.
Senior Probation & Parole Officer
County Safe Streets

Relation                            Name (L,F,M,S)

Contact Type: E-Mail                              Date: 08/24/2007    Time: 13:30

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Safe Streets Court,



Faxed over Admin WRNT for Charles Webster, SCNC.  As of right now, unknown if Webster
is getting charged by NCCPD or if ATF is taking case immediately.  NCCPD turnkey has
the admin wrnt in case the charges stay on the state level for now.  However, if ATF
takes custody of Webster, the admin wrnt will get pulled and not executed.  The feds
say he will likely be held without bail if they charge him.  So, please look on CJIS to
see if he has the new gun charges by NCCPD on 08/24/07 or not.  If the charges are
showing on CJIS the admin was executed and the Feds will wait to see what happens at
the gun committee before going forward on their side.



Relation                            Name (L,F,M,S)

---

Page 4 of 32

00000173


00000173

22

## Contact Notes

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

| | |
|---|---|
| Contact Type: E-Mail | Date: 08/24/2007     Time: 13:30 |

Correction flag: No        Negative: No        Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
Safe Streets Court,

Faxed over Admin WRNT for Charles Webster, SCNC.  As of right now, unknown if Webster is getting charged by NCCPD or if ATF is taking case immediately.  NCCPD turnkey has the admin wrnt in case the charges stay on the state level for now.  However, if ATF takes custody of Webster, the admin wrnt will get pulled and not executed.  The feds say he will likely be held without bail if they charge him.  So, please look on CJIS to see if he has the new gun charges by NCCPD on 08/24/07 or not.  If the charges are showing on CJIS the admin was executed and the Feds will wait to see what happens at the gun committee before going forward on their side.

Relation _____               ____ _____ Name (L,F,M,S)      ... _____ __  .     _____

00000174

00000174

23

### Contact Notes

Date: 06/12/2008

SBI#         : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution  : DO56 New Castle Probation and Parole

---

Contact Type: E-Mail                                    Date: 08/24/2007       Time: 12:22

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
Safe Streets Court,


Faxed over Admin WRNT for Charles Webster, SCNC.  As of right now, unknown if Webster
is getting charged by NCCPD or if ATF is taking case immediately.  NCCPD turnkey has
the admin wrnt in case the charges stay on the state level for now.  However, if ATF
takes custody of Webster, the admin wrnt will get pulled and not executed.  The feds
say he will likely be held without bail if they charge him.  So, please look on CJIS to
see if he has the new gun charges by NCCPD on 08/24/07 or not.  If the charges are
showing on CJIS the admin was executed and the Feds will wait to see what happens at
the gun committee before going forward on their side.



Angela,



I put your cuffs in your top left drawer.



Thanks again.



Bob

Relation _____      Name (L,F,M,S) _____

---

Contact Type: CJIS Check                                Date: 08/24/2007       Time: 12:20

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
negative

Relation _____      Name (L,F,M,S) _____

---

Page 6 of 32

00000175



00000175

24

Contact Notes                                      Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

| Contact Type: General Comments/PO Notes | Date: 08/23/2007 | Time: 20:00 |

Correction flag: No      Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S): Willoughby Robert A Jr

Comments:
CSS conducted Admin Search @ 8-2A Cheswald Blvd. Newark, DE  with SPO Latsko.  Seized 2
handguns, ammunition, .5 grams of marijuana, pakaging material and $1,570 United States
Currency.  (1 Taurus .38 special S#UL54758 loaded w/5 rds and 1 Ruger .45 revolver
S#5840073 loaded with one spent round in cylinder).  Both handguns 29P, the Taurus with
NCCPD and the Ruger with ATF.  ATF contacted and NCCPD waiting to see if ATF takes case
federally on 08/24/07.  If charged by NCCPD, charges will be 2 cts PFBPP, 2.cts of
PABPP, and 2 cts of Rec Stolen Firearm.  CSS completed Safe Streets Admin WRNT and gave
to turnkey, however, if Feds take case and charge S, S will be taken into Federal
Custody and likely held without bail and Admin WRNT will be withdrawn.  In that event,
SPO Latsko will need to submit VOP Report instead of Admin WRNT.

Relation _____                     Name (L,F,M,S) _____

| Contact Type: Admin Warrant | Date: 08/23/2007 | Time: 16:44 |

Correction flag: No      Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
DACS NOTIFICATION : An ADMIN WARRANT #128375 has been created ON this offender

Relation _____                     Name (L,F,M,S) _____

| Contact Type: CJIS Check | Date: 08/23/2007 | Time: 15:45 |

Correction flag: No      Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____                     Name (L,F,M,S) _____

| Contact Type: Costs & Fines | Date: 08/23/2007 | Time: 15:44 |

Correction flag: No      Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Has paid $130.00. Has balance of $2,042.00. All $ from work referral credit-

Relation _____                     Name (L,F,M,S) _____

00000176

00000176
25

## Contact Notes

Date: 06/12/2008

SBI# : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: Telephone From                         Date: 08/23/2007         Time: 14:56

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Det Legenstein reports shots were reported at 10:18pm on 8/20. P informed him that he
was coming from his girlfriend's house. Also, P was a target this morning at a shooting
4th & Rodney in Wilm. P's cousin was shot in the face-released from hospital. P
informed Det legenstein that he just left the incident a minute prior to the shooting.
14 shots were fired at this incident. det. Gifford onf WPD is handling that
investigation. This officer left voice mail for Gifford to call this officer about
about that incident-it's a generic voice mail box for detectives ▨▨▨▨ legenstein
was unsure what time this incident occurred, but stated it is not going to stopped
until they get P.

Relation _____          Name (L,F,M,S) _____

Contact Type: Telephone To                           Date: 08/23/2007        Time: 13:57

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Left message for detective Stephen Legenstein to call this officer ▨▨▨▨▨

Relation _____          Name (L,F,M,S) _____

Contact Type: Telephone To                           Date: 08/23/2007        Time: 13:57

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Left message requesting Det to call this officer about shooting at Harbor Club, to
verify that victim was this officer's probationer

Relation _____          Name (L,F,M,S) _____

Contact Type: OSS Curfew Check                       Date: 08/21/2007        Time: 22:05

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S): Kananen Brian R

Comments:
home

Relation _____          Name (L,F,M,S) _____

Contact Type: Curfew Check                           Date: 08/19/2007        Time: 22:39

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P home, instructed to report for OV on 8/29

Relation _____          Name (L,F,M,S) _____

00000177



00000177

26

**Contact Notes**

Date: 06/12/2008

SBI#     : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole



Correction flag: No     Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Jordan Sabrina F

Comments:
Same add and ph. Just got fired from his job. No police contact.

Relation _____    Name (L,F,M,S) _____

Contact Type: CJIS Check            Date: 08/07/2007     Time: 20:16

Correction flag: No     Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____    Name (L,F,M,S) _____

Contact Type: General Comments/PO Notes     Date: 08/07/2007     Time: 20:16

Correction flag: No     Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
This officer has been on vacation since 7/27/07. Returned to work today.

Relation _____    Name (L,F,M,S) _____

Page 9 of 32



**Contact Notes**

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution  : DO56 New Castle Probation and Parole

| | Date: 07/25/2007 | Time: 16:56 |
|---|---|---|
Contact Type: Pay Stub

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
logistics dated 7/5 for 47.25 hrs

Relation _____        Name (L,F,M,S)_____

Contact Type: Office Visit        Date: 07/25/2007        Time: 16:55

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
P reports no changes, no pc

Relation _____        Name (L,F,M,S)_____

Contact Type: CJIS Check        Date: 07/25/2007        Time: 16:55

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
neg

Relation _____        Name (L,F,M,S)_____

Contact Type: General Comments/PO Notes        Date: 07/24/2007        Time: 14:58

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
PO Latsko has been out of work since 7/2 (last day of work 6/29) due to an injury and
returned to work today.

Relation _____        Name (L,F,M,S)_____

Contact Type: Office Visit        Date: 07/11/2007        Time: 16:15

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Carrothers Theresa A

Comments:
LE
O reports that he is at the sa and is employed by Job 1# O reports that he comes in
every two weeks and has had no pc

Relation _____        Name (L,F,M,S)_____

Contact Type: Home Visit        Date: 06/26/2007        Time: 13:08

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
P's father reports P was @ work

Relation _____        Name (L,F,M,S)_____

00000179

00000179

## Contact Notes

Date: 06/12/2008

SBI#      : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: Office Visit                    Date: 06/20/2007    Time: 16:52

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports s/address, began working @ Links off 896 today-car place-make front and back
bumpers. Assembly line. No pc. Next OV 7/11

Relation _____ Name (L,F,M,S) _____

Contact Type: CJIS Check                      Date: 06/20/2007    Time: 09:58

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____ Name (L,F,M,S) _____

Contact Type: Office Visit                    Date: 06/06/2007    Time: 13:20

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports s/address, was fired due to tardiness 3 days in a row-no ride, reports he did
not like it to much-selling books,etc to people. Did not have a ride at 8:00am. No pc.
Next OV 6/20

Relation _____ Name (L,F,M,S) _____

Contact Type: CJIS Check                      Date: 06/06/2007    Time: 09:47

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____ Name (L,F,M,S) _____

Contact Type: Home Visit                      Date: 06/05/2007    Time: 19:29

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
female reports P is not home

Relation _____ Name (L,F,M,S) _____

Contact Type: OSS Curfew Check                Date: 05/20/2007    Time: 22:26

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Kelly James M

Comments:
home

Relation _____ Name (L,F,M,S) _____

00000180

00000180

29

**Contact Notes**

Date: 06/12/2008

SBI#    : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution  : DO56 New Castle Probation and Parole

---

Contact Type: Curfew Check        Date: 05/19/2007    Time: 22:26

Correction flag: No     Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
home

Relation               Name (L,F,M,S)

Contact Type: Office Visit        Date: 05/16/2007    Time: 14:45

Correction flag: No     Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports he began employment at Ace Industry yesterday. had orientation. begins f/t on
5/21. Mon-friday. S/address, no pc. next OV 6/6

Relation               Name (L,F,M,S)

Contact Type: CJIS Check         Date: 05/16/2007    Time: 14:43

Correction flag: No     Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation               Name (L,F,M,S)

Contact Type: Home Visit         Date: 05/15/2007    Time: 18:10

Correction flag: No     Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
p's father reports P was @ work

Relation               Name (L,F,M,S)

Contact Type: Office Visit        Date: 05/02/2007    Time: 14:12

Correction flag: No     Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports no changes, no pc. next OV 5/16

Relation               Name (L,F,M,S)

Contact Type: CJIS Check         Date: 05/02/2007    Time: 14:12

Correction flag: No     Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation               Name (L,F,M,S)

---

00000181

00000181
30

## Contact Notes

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

| | |
|---|---|
| Contact Type: Office Visit | Date: 04/18/2007    Time: 14:13 |

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports no changes, no pc. Has a severe toothache for past 5 days-has a dentist appt this Friday. Repoorts he lst his fillings. No other problems. Next OV 5/2

Relation                          Name (L,F,M,S)

| | |
|---|---|
| Contact Type: CJIS Check | Date: 04/18/2007    Time: 09:46 |

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
negative

Relation                          Name (L,F,M,S)

| | |
|---|---|
| Contact Type: Curfew Check | Date: 04/14/2007    Time: 22:35 |

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
home

Relation                          Name (L,F,M,S)

| | |
|---|---|
| Contact Type: Office Visit | Date: 04/04/2007    Time: 11:33 |

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
P report no changes, no pc. Getting resume together. Has not paid on fines because he has no $ Next OV 4/18

Relation                          Name (L,F,M,S)

| | |
|---|---|
| Contact Type: CJIS Check | Date: 04/04/2007    Time: 09:08 |

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
negative

Relation                          Name (L,F,M,S)

| | |
|---|---|
| Contact Type: CJIS Check | Date: 03/28/2007    Time: 08:49 |

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
negative

Relation                          Name (L,F,M,S)

00000182



00000182

31

Contact Notes

Date: 06/12/2008

SBI# : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: Curfew Check                                Date: 03/22/2007        Time: 22:36

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
home

Relation                                    Name (L,F,M,S)

---

Contact Type: Office Visit                                Date: 03/21/2007        Time: 11:58

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports no changes, no pc. Advised P that  he must provide proof of employment and
begin paying on fines. Reports his cousin asked him to be foreman of construction
company in April. Next OV 4/4

Relation                                    Name (L,F,M,S)

---

Contact Type: CJIS Check                                  Date: 03/21/2007        Time: 11:55

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation                                    Name (L,F,M,S)

---

Contact Type: Home Visit                                  Date: 03/13/2007        Time: 16:35

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P's dad just got home from work, P was not home

Relation                                    Name (L,F,M,S)

---

Contact Type: CJIS Check                                  Date: 03/07/2007        Time: 15:10

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation                                    Name (L,F,M,S)

---

Contact Type: Office Visit                                Date: 03/07/2007        Time: 15:10

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports no changes, no pc. Next Ov 3/21/07

Relation                                    Name (L,F,M,S)

---

Page 14 of 32

00000183



00000183

32

## Contact Notes

Date: 06/12/2008

SBI# : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: OSS Curfew Check    Date: 03/04/2007    Time: 22:30

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Kananen Brian R

Comments:
home

Relation _____    Name (L,F,M,S) _____

---

Contact Type: Home Visit    Date: 02/27/2007    Time: 17:22

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P's father reports P resides @ residence, but not home

Relation _____    Name (L,F,M,S) _____

---

Contact Type: Office Visit    Date: 02/21/2007    Time: 15:20

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports no changes, no pc. P reports he is sick-101 fever-saw P in the hallway when
he stated this-P reports he was feeling extremely bad. next OV 3/7

Relation _____    Name (L,F,M,S) _____

---

Contact Type: CJIS Check    Date: 02/21/2007    Time: 08:55

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____    Name (L,F,M,S) _____

---

Contact Type: General Comments/PO Notes    Date: 02/13/2007    Time: 16:24

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
no field work due to inclement weather

Relation _____    Name (L,F,M,S) _____

---

Contact Type: Curfew Check    Date: 02/09/2007    Time: 22:42

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
home

Relation _____    Name (L,F,M,S) _____

Page 15 of 32

00000184

00000184

Date: 06/12/2008

## Contact Notes

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution  : DO56 New Castle Probation and Parole

| | |
|---|---|
| Contact Type: CJIS Check | Date: 02/07/2007    Time: 14:47 |

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
negative

Relation _____    Name (L,F,M,S) _____

Contact Type: Office Visit    Date: 02/07/2007    Time: 14:47

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
P reports he was carjcked last Saturday in Wilmington-2 guys jumped him on 4th street & union. Guys had hoods and pulled P out of car. P filed police report. Found car in Chester. Wrecked. No changes. Next OV 2/21

Relation _____    Name (L,F,M,S) _____

Contact Type: Home Visit    Date: 01/29/2007    Time: 21:09

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
P's father reports P is not home

Relation _____    Name (L,F,M,S) _____

Contact Type: General Comments/PO Notes    Date: 01/17/2007    Time: 21:20

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Cerminaro Richard A

Comments:
O stopped by OSS at 4th & Delamore Sts while driving 2001 BMX X5 (PC478100) all checks clear O SOW

Relation _____    Name (L,F,M,S) _____

Contact Type: Office Visit    Date: 01/17/2007    Time: 14:47

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
Addressed P's missed curfew-claims he went to the store-informed him that he cannot be out past curfew. P reports no changes, no pc. Notified P that he must obtained employment that he can provide paystub or copy of check. Next OV 2/7

Relation _____    Name (L,F,M,S) _____

00000185

00000185

34

**Contact Notes**

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: CJIS Check                    Date: 01/17/2007        Time: 14:47

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
negative

Relation _____        Name (L,F,M,S) _____

Contact Type: Curfew Check                    Date: 01/08/2007        Time: 22:20

Correction flag: No        Negative: Yes      Negative Contact Reasons: Officer absent

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
Father reports P went to the store

Relation _____        Name (L,F,M,S) _____

Contact Type: Office Visit                    Date: 01/03/2007        Time: 15:34

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
P reports no changes, no pc. Reports 1st time in 16 yrs he celebrated Thanksgiving,
Christmas, and New Years-has been locked up. Next OV 1/17

Relation _____        Name (L,F,M,S) _____

Contact Type: CJIS Check                    Date: 01/03/2007        Time: 15:32

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
negative

Relation _____        Name (L,F,M,S) _____

Contact Type: Office Visit                    Date: 12/20/2006        Time: 12:24

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
P reports s/address, has been sick the past 4 days-had the flu, no pc. next OV 1/3/07

Relation _____        Name (L,F,M,S) _____

Contact Type: CJIS Check                    Date: 12/20/2006        Time: 12:22

Correction flag: No        Negative: No      Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
negative

Relation _____        Name (L,F,M,S) _____

---

00000186

00000186

35

## Contact Notes

Date: 06/12/2008

SBI# : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: Written Report                      Date: 12/13/2006      Time: 18:12

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
received 2nd progress report from parole board approving discharge of conditional
release for all three charges for case 9711010854

Relation                         Name (L,F,M,S)

---

Contact Type: OSS Curfew Check                    Date: 12/12/2006      Time: 22:20

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Kananen Brian R

Comments:
home

Relation                         Name (L,F,M,S)

---

Contact Type: Office Visit                        Date: 12/06/2006      Time: 12:58

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports no changes, addressed conditions 1-13 and all special conditions for deferred
pb. P signed and received copies of conditions, acknowledgement, auth to release. Next
OV 12/20/06

Relation                         Name (L,F,M,S)

---

Contact Type: Fax                                 Date: 12/04/2006      Time: 13:14

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Progress report to board of parole

Relation                         Name (L,F,M,S)

---

Contact Type: Telephone To                        Date: 12/04/2006      Time: 13:09

Correction flag: No      Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Parole Board: reports they only received 1 progress report: faxing the other report to
tehm @ 577-3501

Relation                         Name (L,F,M,S)

---

00000187



00000187

36

**Contact Notes**

Date: 06/12/2008

SBI#       : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution  : DO56 New Castle Probation and Parole

---

Contact Type: General Comments/PO Notes                Date: 12/01/2006    Time: 19:57

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
Spoke to Linda Walton last week-cannot close 1 cr case, have to close all at the same time

Relation _____ Name (L,F,M,S) _____

---

Contact Type: E-Mail                                    Date: 12/01/2006    Time: 19:57

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
Hi Barbara-Ann,

I hope you can help me out on this or assist me in this matter.  On 10/31/06, I submitted 2 progress reports to the parole board to discharge 2 different conditional release sentences that Mr. Webster was serving with me. I received 1 signed progress report back last week for case # 91011456D1.  I have not received the signed progress report back for case 9711010854. Can you let me know if you received it because they were both done on the same day and should have been mailed out together? If you have not received the latter report, would it be possible to fax it to you?  Thanks.


Angela Latsko
Senior Probation Officer
323-6050 ext 224
323-6066 fax

Relation _____ Name (L,F,M,S) _____

---

Contact Type: Home Visit                                Date: 11/20/2006    Time: 18:26

Correction flag: No        Negative: Yes   Negative Contact Reasons: Offender Not At Home

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
no answer

Relation _____ Name (L,F,M,S) _____

---

Contact Type: Written Report                            Date: 11/20/2006    Time: 12:22

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
Received 1 signed preogress report back from parole board for VN-11-11-1659-01 to discharge per med. Waiting on the other

Relation _____ Name (L,F,M,S) _____

---

Page 19 of 32

00000188



00000188

37

<u>Contact Notes</u>                                                Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: Office Visit                    Date: 11/15/2006      Time: 13:20

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports no changes, pulled over by police for broken headlight-given a warning. Next
OV 12/6

Relation _____          Name (L,F,M,S) _____

Contact Type: CJIS Check                      Date: 11/15/2006      Time: 13:18

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____          Name (L,F,M,S) _____

Contact Type: Curfew Check                    Date: 11/06/2006      Time: 22:53

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
home

Relation _____          Name (L,F,M,S) _____

Contact Type: Office Visit                    Date: 11/01/2006      Time: 13:12

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports no changes, no pc. Next OV 11/15

Relation _____          Name (L,F,M,S) _____

Contact Type: CJIS Check                      Date: 11/01/2006      Time: 13:12

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____          Name (L,F,M,S) _____

Contact Type: Progress Report                 Date: 10/31/2006      Time: 18:05

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
DACS NOTIFICATION : PROGRESS REPORT # 172329 has been created on this offender

Relation _____          Name (L,F,M,S) _____

---

Page 20 of 32

00000189


00000189

38

Contact Notes

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO55 New Castle Probation and Parole

| | |
|---|---|
| Contact Type: Progress Report | Date: 10/31/2006    Time: 17:50 |

Correction flag: No      Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
DACS NOTIFICATION : PROGRESS REPORT # 172328 has been created on this offender

Relation _____ Name (L,F,M,S) _____

| | |
|---|---|
| Contact Type: CJIS Check | Date: 10/31/2006    Time: 17:37 |

Correction flag: No      Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____ Name (L,F,M,S) _____

| | |
|---|---|
| Contact Type: Office Visit | Date: 10/18/2006    Time: 16:32 |

Correction flag: No      Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports he went to the hospital friday night, 10/6

Relation _____ Name (L,F,M,S) _____

| | |
|---|---|
| Contact Type: Office Visit | Date: 10/18/2006    Time: 16:24 |

Correction flag: No      Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports he was pulled over by police and his questioned his identity. P reports he
got into a scuffle at a barbeque w/his family members during a football game. No
charges. P was bitten on the leg (upper thigh)-pulled up his sweatpants and showed this
officer his bite mark-full bite mark on leg. and hand.  Asked if he kicked his "ass"
because the bite mark was a full bite mark-P stated yes he kicked his ass-didn't know
he was getting bit at the time. Next OV 11/1

Relation _____ Name (L,F,M,S) _____

| | |
|---|---|
| Contact Type: CJIS Check | Date: 10/18/2006    Time: 16:24 |

Correction flag: No      Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____ Name (L,F,M,S) _____

00000190

00000190

## Contact Notes

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: Office Visit                       Date: 10/04/2006     Time: 19:15

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
OCR-seen by Jordan-this officer in contested hearing. P reports no changes, no pc

Relation                              Name (L,F,M,S)

---

Contact Type: OSS Curfew Check                   Date: 10/03/2006     Time: 22:09

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Kelly James M

Comments:
home

Relation                              Name (L,F,M,S)

---

Contact Type: OSS Curfew Check                   Date: 09/26/2006     Time: 22:45

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Kananen Brian R

Comments:
home

Relation                              Name (L,F,M,S)

---

Contact Type: Office Visit                       Date: 09/20/2006     Time: 16:58

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports no changes, no pc. Next Ov 10/4

Relation                              Name (L,F,M,S)

---

Contact Type: CJIS Check                         Date: 09/20/2006     Time: 16:58

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation                              Name (L,F,M,S)

---

Contact Type: Curfew Check                       Date: 09/17/2006     Time: 22:27

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
home

Relation                              Name (L,F,M,S)

---

Page 22 of 32

00000191

00000191

40

### Contact Notes

Date: 06/12/2008

SBI#   : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: Office Visit      Date: 09/06/2006    Time: 14:40

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports no changes, no pc. Next OV 9/20

Relation            Name (L,F,M,S)

---

Contact Type: CJIS Check      Date: 09/06/2006    Time: 14:34

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation            Name (L,F,M,S)

---

Contact Type: Curfew Check      Date: 08/23/2006    Time: 22:50

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
home

Relation            Name (L,F,M,S)

---

Contact Type: Office Visit      Date: 08/22/2006    Time: 14:20

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P reports s/address, reports he works at Platinum T-Shirts but gets paid under the
table-informed P that that does not count as employment-needs to provide proof of
employment, no pc. P reports he has not heard from community mental health-reports he
cannot even remember the guys name. LSIR completed. Next OV 9/6/06.

Relation            Name (L,F,M,S)

---

Contact Type: Supervision Plan      Date: 08/22/2006    Time: 13:50

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Pini Carlo R

Comments:
DACS NOTIFICATION : Supervision Plan # 1 has been completed and Approved by the
supervisor.

Relation            Name (L,F,M,S)

---

Page 23 of 32

00000192

00000192

## Contact Notes

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: LSIR - Change in Risk Category        Date: 08/22/2006        Time: 13:50

Correction flag: No        Negative: No        Negative Contact Reasons:

Entered officer (L,F,M,S): Pini Carlo R

Comments:
DACS NOTIFICATION : Classification Level has changed from Level 3 to Level 3
Phase B as per LSIR #13249.

Relation _____ Name (L,F,M,S) _____

Contact Type: LSIR-Medium High Risk        Date: 08/22/2006        Time: 13:50

Correction flag: No        Negative: No        Negative Contact Reasons:

Entered officer (L,F,M,S): Pini Carlo R

Comments:
DACS NOTIFICATION : LSIR # 13249 has been completed and Approved by the Supervisor for
this offender. The total score is 33.

Relation _____ Name (L,F,M,S) _____

Contact Type: OSS Curfew Check        Date: 08/21/2006        Time: 22:13

Correction flag: No        Negative: No        Negative Contact Reasons:

Entered officer (L,F,M,S): Kananen Brian R

Comments:
home

Relation _____ Name (L,F,M,S) _____

Contact Type: CJIS Check        Date: 08/16/2006        Time: 10:53

Correction flag: No        Negative: No        Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation _____ Name (L,F,M,S) _____

Contact Type: Telephone From        Date: 08/16/2006        Time: 09:51

Correction flag: No        Negative: No        Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P permitted to go to family reunion in newark on 8/19/06. did not request to stay out
past curfew-but must be hom by 10:00pm

Relation _____ Name (L,F,M,S) _____

Contact Type: Telephone To        Date: 08/16/2006        Time: 09:18

Correction flag: No        Negative: No        Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Rescheduled LSIR to 8/22 @ 2:00pm

Relation _____ Name (L,F,M,S) _____

00000193

00000193

42

<u>Contact Notes</u>                                    Date: 06/12/2008

SBI#       : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

| | |
|---|---|
| Contact Type: OSS Curfew Check | Date: 08/07/2006    Time: 22:29 |

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Kananen Brian R

Comments:
home

Relation _____ Name  (L,F,M,S) _____

| | |
|---|---|
| Contact Type: Office Visit | Date: 08/02/2006    Time: 10:45 |

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
Next OV 8/17 @ 12:30 for LSIR

Relation _____ Name  (L,F,M,S) _____

| | |
|---|---|
| Contact Type: CJIS Check | Date: 08/02/2006    Time: 10:40 |

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
negative

Relation _____ Name  (L,F,M,S) _____

| | |
|---|---|
| Contact Type: Office Visit | Date: 08/02/2006    Time: 10:40 |

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
P reports no changes, no pc. Went to mental health eval-reports Rick is to call this
officer. Next OV 8/21

Relation _____ Name  (L,F,M,S) _____

| | |
|---|---|
| Contact Type: Curfew Check | Date: 07/24/2006    Time: 22:46 |

Correction flag: No       Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
home. reports mental health eval had to be rescheduled to this thursday @ 11;00. They
had his last name wrong

Relation _____ Name  (L,F,M,S) _____

Page 25 of 32

00000194

00000194

43

## Contact Notes

Date: 06/12/2008

SBI# : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

| | | |
|---|---|---|
| Contact Type: Office Visit | Date: 07/19/2006 | Time: 11:19 |

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Addressed w/P that this officer received a phone call about him making threats to family members and missing curfew. Needs to stop if this is the case-he denies any of it. Reports he contacted community mental health and has an appt w/rick on 7/24 @ 2:00pm. P reports he has not been out of the house in 2 days. No pc. Next OV 8/2/06

Relation                                       Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: Telephone From | Date: 07/19/2006 | Time: 09:20 |

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P's sister,Charmaine, reports P is not complying w/curfew. Coming and going whenever he pleases, just got his driver's license, smoking inside apt too-that's why she moved out due to her being pregnant plus he threatened to beat her down. P is giving his father a hard time. P is not seeking employment. Notified her that this officer will look into it and don't hestitate to call this officer if she or her father has any problems

Relation                                       Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: Telephone To | Date: 07/12/2006 | Time: 20:06 |

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Contacted P-notified P to call Joseph tegmeier▓▓▓▓▓▓▓▓before his next OV on 7/19 for further mental health assessment. stated h"he got me"

Relation                                       Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: Correction to Case Notes | Date: 07/12/2006 | Time: 19:57 |

Correction flag: No    Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
7/6/06 case notes @ 17:24 were for Probationer George White,00485946. Mr. White called during P Norris's 1sir. P White reported his home phone was 838-1963. He was instructed to report for OV on 7/12 between 10:00am-3:00pm

Relation                                       Name (L,F,M,S)

Page 26 of 32

00000195



00000195

44

## Contact Notes

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

| | | |
|---|---|---|
| Contact Type: Treatment Verification | Date: 07/12/2006 | Time: 19:52 |

Correction flag: No     Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
received mental health referral form today; P should be referred to community mental
health for further assessment dated 7/7/06. P has been approved for eval thru community
mental health. must contact Joseph Tegtmeier @ ▓▓▓▓▓▓

Relation _____ Name (L,F,M,S) _____

| | | |
|---|---|---|
| Contact Type: OSS Curfew Check | Date: 07/09/2006 | Time: 22:52 |

Correction flag: No     Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S):  Kananen Brian R

Comments:
home

Relation _____ Name (L,F,M,S) _____

| | | |
|---|---|---|
| Contact Type: Treatment Verification | Date: 07/06/2006 | Time: 21:35 |

Correction flag: No     Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
P had s/a eval w/BCI on 7/5/06-no treatment recommended

Relation _____ Name (L,F,M,S) _____

| | | |
|---|---|---|
| Contact Type: Telephone From | Date: 07/06/2006 | Time: 17:24 |

Correction flag: No     Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Spoke to P this afternoon while doing LSIR for F. Norris. reports home phone 838-1963,
Instructed to report for OV on 7/12 between 10:00am-3:00pm

Relation _____ Name (L,F,M,S) _____

| | | |
|---|---|---|
| Contact Type: CJIS Check | Date: 07/05/2006 | Time: 14:01 |

Correction flag: No     Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S):  Tutt Rahsaan J

Comments:
negative

Relation _____ Name (L,F,M,S) _____

| | | |
|---|---|---|
| Contact Type: Office Visit | Date: 07/05/2006 | Time: 14:01 |

Correction flag: No     Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S):  Tutt Rahsaan J

Comments:
no changes next ov 7/12/06

Relation _____ Name (L,F,M,S) _____

00000196


00000196

45

<u>Contact Notes</u>                                    Date: 06/12/2008

SBI#      : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution  : DO56 New Castle Probation and Parole

| | | |
|---|---|---|
| Contact Type: Home Visit | Date: 07/01/2006 | Time: 22:13 |

Correction flag: No      Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
home, reports he reported to Wilm. day Reporting Center Sat morning

Relation                          Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: Drug/DNA Test | Date: 07/01/2006 | Time: 09:41 |

Correction flag: No      Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Fentress Eric J

Comments:
DACS NOTIFICATION : Fentress, Eric J  has conducted a Urina (Drugs) test for WEBSTER
CHARLES A J on 07/01/2006 at 09:41
DACS NOTIFICATION UPDATE : Results for Urine (Drugs) test is : NEGATIVE.

Relation                          Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: Office Visit | Date: 06/28/2006 | Time: 15:21 |

Correction flag: No      Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
P reports s/address, no pc. Completed mental health referral, s/a referal completed-has
appt w/BCI on 7/5 @ 1:00pm-to see this officer afterwards on 7/5. No pc.

Relation                          Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: CJIS Check | Date: 06/28/2006 | Time: 08:56 |

Correction flag: No      Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
negative

Relation                          Name (L,F,M,S)

| | | |
|---|---|---|
| Contact Type: Curfew Check | Date: 06/25/2006 | Time: 22:42 |

Correction flag: No      Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S):  Latsko Angela L

Comments:
home

Relation                          Name (L,F,M,S)

00000197

## Contact Notes

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

| Contact Type: Drug/DNA Test | | Date: 06/24/2006 | Time: 08:22 |
|---|---|---|---|

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Carrothers Theresa A

Comments:
DACS NOTIFICATION : Carrothers, Theresa A  has conducted a Urine (Drugs) test for
WEBSTER CHARLES A J on 06/24/2006 at 08:22
DACS NOTIFICATION UPDATE : Results for Urine (Drugs) test is : NEGATIVE.

Relation                           Name (L,F,M,S)

---

Contact Type: Drug/DNA Test                    Date: 06/21/2006        Time: 14:40

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
DACS NOTIFICATION : Latsko, Angela L  has conducted a Urine (Drugs) test for WEBSTER
CHARLES A J on 06/21/2006 at 14:40
DACS NOTIFICATION UPDATE : Results for Urine (Drugs) test is : NEGATIVE.

Relation                           Name (L,F,M,S)

---

Contact Type: Office Visit                     Date: 06/21/2006        Time: 14:26

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Addressed w/P that he is zero tolerance and he already has 3 missed curfews, cannot
call this officer and stay he is going to be out passed curfew-must get permission.
Wanted this officer's home phone #, drug screen taken. No pc. Aware to report to Wilm's
day reporting Center on 6/24 between 9:30am-10:00am. next OV 6/28

Relation                           Name (L,F,M,S)

---

Contact Type: CJIS Check                       Date: 06/21/2006        Time: 09:08

Correction flag: No       Negative: No     Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
negative

Relation                           Name (L,F,M,S)

00000198

00000198

## Contact Notes

Date: 06/12/2008

SBI# : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

---

Contact Type: Home Visit                                    Date: 06/19/2006        Time: 20:40

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Observed P outside in parking lot of reiko Kitchen & Bath Showroom. P saw this officer
and tried to sneak in the back of the apartment w/out being seen. P stated that he was
outside smoking because they cannot smoke in the apartment. Informed P that he was not
out front havong a cigarette, but in was in the shopping center's parking lot. P has
6:00pm curfew due to unemployment

Relation                              Name (L,F,M,S)

---

Contact Type: Office Visit                                  Date: 06/14/2006        Time: 10:24

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Latsko Angela L

Comments:
Initial OV: No file. P reports he resides @ 8 Cheswold Blvd, Apt 2-A, Habor Club Apts,
Newark, DE 19713. Home phone 292-8683. Reports he resides w/his father-Charles Webster-
no other occupants in the home. Reports he was informed to tell this officer he is in
the re-entry program. Reporting instructions and curfew addressed. P signed and
received copies. Next OV 6/21

Relation                              Name (L,F,M,S)

---

Contact Type: OSS Curfew Check                              Date: 06/11/2006        Time: 22:47

Correction flag: No        Negative: Yes    Negative Contact Reasons: Offender absent

Entered officer (L,F,M,S): Kananen Brian R

Comments:
at store, per father

Relation                              Name (L,F,M,S)

---

Contact Type: General Comments/PO Notes                     Date: 06/06/2006        Time: 09:47

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S): Ayers Ana M

Comments:
Intake interview completed at SVOP. Offender assigned to Angela Latsko DO56. Offender
to be released today. Offender has CR until 11/15/06 and has DP to follow. Offender
began to dispute he accumulated good time. Instructed offender to discuss this with
his PO. Offender did not provide an emergency contact person, he stated that P&P had
his home address. Told offender P&P needs name/telephone number of someone that does
not live with him. Offender had no name to give. Offender has bad attitude, was
reluctant to sign some of the intake papers.

Relation                              Name (L,F,M,S)

00000199



00000199

48

## Contact Notes

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution  : DO56 New Castle Probation and Parole

---

Contact Type: Office Visit                          Date: 04/26/2006      Time: 13:03

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Williams Doreen M

Comments:
O HAS RETURNED FROM SANCTION AT SCCC
O HAD A FEW ???---ANSWERED
O DECLINED R.O.A.P. PACKET
SS GIVEN

Relation                          Name (L,F,M,S)

---

Contact Type: Drug/DNA Test                         Date: 04/25/2006      Time: 12:29

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Kuneman Donald J

Comments:
DACS NOTIFICATION : Kuneman, Donald J has conducted a Urine (Drugs) test for WEBSTER
CHARLES A J on 04/25/2006 at 12:29
DACS NOTIFICATION UPDATE : Results for Urine (Drugs) test is : NEGATIVE.

Relation                          Name (L,F,M,S)

---

Contact Type: General Comments/PO Notes             Date: 04/04/2006      Time: 09:34

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Adams Eric K

Comments:
MDT AT SVOP- CHARGE OF SMOKING, DANGEROUS CONTRABAND- RECOMMENDATION- DC DISMISSED AND
8 HOURS EWI ON THE CONTRABAND.

Relation                          Name (L,F,M,S)

---

Contact Type: General Comments/PO Notes             Date: 03/14/2006      Time: 01:30

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Baull Guy L

Comments:
6 weeks sanction at SVOP from CVOP.  Est Ret Dte 4/25/06

Relation                          Name (L,F,M,S)

---

Contact Type: Progress Report                       Date: 03/13/2006      Time: 11:55

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Williams Doreen M

Comments:
DACS NOTIFICATION : PROGRESS REPORT # 58749 has been created on this offender

Relation                          Name (L,F,M,S)

00000200

00000200

**Contact Notes**

Date: 06/12/2008

SBI#        : 00203050

Name(L,F,M,S): WEBSTER CHARLES A J

Institution : DO56 New Castle Probation and Parole

| | |
|---|---|
| Contact Type: Office Visit | Date: 02/27/2006    Time: 09:53 |

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  Williams Doreen M

Comments:
INITIAL OV---ORIENTATION
O IS HERE FOR LV4 WR (NCC)
O HAD A FEW ??? ABOUT SENT; WR WAIT TIME---ANSWERED

Relation _____ Name (L,F,M,S)_____

| | |
|---|---|
| Contact Type: DACS Notification | Date: 06/24/2002    Time: 16:50 |

Correction flag: No        Negative: No    Negative Contact Reasons:

Entered officer (L,F,M,S):  ADMINISTRATOR DACS

Comments:
The Case Notes functionality in DACS was officially implemented today, June 24th, 2002.
Over the next few days officers will begin using this screen to document case notes and
stop writing them in the paper files. For case notes prior to this period, please refer
to the paper file.

Relation _____ Name (L,F,M,S)_____

00000201

00000201

50

# DEFENDANT'S EXHIBIT 3

P&P Form 508.8/99

## ARREST-SEARCH CHECKLIST

### AUTHORIZATION EXPIRES IN 24 HOURS FROM SUPERVISOR'S DATE/TIME; UNLESS AN OPTIONAL EXPIRATION DATE/TIME IS ENTERED.

| Offender's name: | Charles Webster Jr. | Team members: | Ciepfeld, Willoughby, Lafield, |
| Address: | S. Chwilall Blvd Apt 2-A New Dl 19713 | | Difore, Shirkey, McCoy |

| ARREST CHECKLIST MUST BE ATTACHED TO A DETAILED ARREST INCIDENT REPORT | | | SEARCH CHECKLIST MUST BE ATTACHED TO A DETAILED ARREST INCIDENT REPORT | | |
|---|---|---|---|---|---|
| **ARREST DECISION FACTORS:** | Check: YES | NO | **SEARCH DECISION FACTORS:** | Check: YES | NO |
| Reason exists to believe offender is engaged or about to engage in a clear and substantial risk to the community or their self. | X | | Sufficient reason to believe the offender possesses contraband. | X | |
| An active warrant or capias exists. | | X | Sufficient reason to believe the offender is in violation of his/her probation or parole. | X | |
| Offender has a capias history. | X | | Information from a reliable informant indicating offender possesses contraband or is violating the law. | | X |
| Offender likely to abscond. | X | | Information from the informant is corroborated. | | X |
| List justification and exigent circumstances for arrest. | | | Approval obtained from a Supervisor, Manager, or Director. If not, list extreme exigent circumstances required to proceed. | X | |
| | | | | | |
| | | | | | |
| **ARREST STRATEGY:** | | | **SEARCH STRATEGY:** | | |
| A Supervisor, Manager, or Director notified. | X | | Sufficient staff to search. | X | |
| Briefing held. | X | | Individual responsibilities assigned. | X | |
| Superior force present to make arrest. | X | | Police called to provide search security. | X | |
| Personnel trained in arrest procedures, handcuffing techniques, and defensive tactics. If not, explain in Arrest Incident Report. | X | | Proper planning for search is completed. | X | |
| Police contacted to make the arrest. | X | | Persons involved in search have been properly trained. | X | |
| | | | Arrangement made to secure contraband and potentially seized. | X | |

| Probation and Parole Officer | Date Requested 8-23-07 | Supervisor | Date/Time Approved | Executed, MED, Closed or OIC ( Optional) Expiration: Date / Time |
|---|---|---|---|---|