IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 07-115-SLR |
| ) | |
| CHARLES WEBSTER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

On August 28, 2007, defendant Charles A. Webster was indicted on two counts of possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1). (D.I. 8) The charges emanate from the Delaware Probation and Parole Office's August 23, 2007 administrative search of defendant's residence, wherein two firearms were discovered. (D.I. 2) Defendant moves for suppression of evidence and statements, arguing that the State of Delaware and its Probation and Parol officers did not have a reasonable basis for conducting a search of defendant's residence for contraband.[1] (D.I. 16, 38) An evidentiary hearing was conducted on July 1, 2008.[2] (D.I. 40) The

---

[1] At the evidentiary hearing, defense counsel clarified that suppression of his statements was sought under the *Wong Sun* doctrine and was not challenged independently under *Miranda*. (D.I. 40 at 2-3)

[2] Testifying on behalf of plaintiff were Jeanette Lingafeld ("Lingafeld"), senior probation officer, and Patrick Cronin ("Cronin"), probation and parole supervisor. (D.I. 40 at 4-5, 65) Testifying on behalf of defendant was Angela Latsko ("Latsko"), senior probation officer. (*Id.* at 76-77)

matter is fully briefed. (D.I. 38, 39) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion will be denied.

## II. FINDINGS OF FACTS

Pursuant to Federal Rules of Criminal Procedure 12(d), the following constitutes the court's essential findings of fact.

1. On March 23, 1998, defendant entered into a plea agreement in the Superior Court for New Castle County, Delaware, wherein he pled guilty to charges of: (1) assault first degree; (2) possession of a firearm during the commission of a felony; and (3) reckless endangering first degree. (GX2 at 44) Defendant was sentenced to more than one year of imprisonment, to be followed by Level III intensive probation. (GX2 at 45-48) The sentencing court included a "zero tolerance" statement in its order:

> Note: Defendant has a **long violent, juvenile record**. As soon as defendant violates probation, he must be taken off the street. Defendant is lucky he received a Rule 11 plea.

(GX2 at 48, D.I. 40 at 13) (emphasis in original)

2. Following his release from prison in 2006, defendant was advised that, consistent with the Level III standard curfew, "[i]f you do not have a job, your curfew is 6 p.m. to 6 a.m."[3] (GX3) Latsko began supervising defendant in June 2006. (D.I. 40 at 76-77) Latsko was aware of the zero tolerance sentencing statement contained in defendant's sentencing order. (*Id.* at 77, GX4) On December 6, 2006, defendant

---

[3]Additionally, defendant was required to obtain and remain employed. Latsko testified that defendant never obtained employment throughout his probation and missed his curfew on one occasion prior to the events in issue. (GX3, GX4; D.I. 40 at 79, 81) Defendant did report as required by probation and remained arrest-free. Latsko did not file any violations against defendant.

2

signed a supervision form, outlining additional conditions of his probation and warning, "you are subject to arrest and to a search of your living quarters, person or vehicle without a warrant at any time by a probation/parole officer." (GX 4 at 2)

3. On August 23, 2007, Lingafeld[4] received information about two shootings involving defendant from Latsko and New Castle County Detectives Alfree and Lankenstein (*id.* at 18-21), to wit: On August 20, 2007 at approximately 10:00 p.m., defendant was the victim of a shooting. (*Id.* at 21, 60) Two days later, on August 22, 2007 at around 7:30 p.m., defendant was in the city[5] with his female cousin. (*Id.* at 19-20) Soon after defendant left the area, his cousin was shot in the face while the occupant of a car. Approximately fourteen shots were fired into the car. (*Id.* at 43-44) Detectives told Lingafeld that they suspected defendant had been robbing drug dealers; Lingafeld concluded that the robberies were the motive for the shootings. (*Id.* at 41-43) She also noted that both shootings occurred after defendant's 6:00 p.m. curfew. (*Id.* at 49)

4. After receiving this information, Lingafeld searched defendant's criminal history on DELJIS system, an automated computer system that would allow Lingafeld to

---

[4]Lingafeld has been a senior probation officer for four years. (*Id.* at 4) She is currently assigned to the County Safe Streets Program ("Safe Streets"), where her duties include monitoring and verifying that violent probationers are abiding by the conditions of probation and investigating probationers involved in criminal activity. (*Id.* at 5) Safe Streets was created in 1997 in response to shootings that were occurring in the Wilmington, Delaware area and went statewide in January 1999. (*Id.* at 66) Safe Streets is a collaborative program between Delaware Probation and Parole and New Castle County police officers. (*Id.* at 6, 65) To that end, Lingafeld has authority to access probationers' criminal records and is in constant contact with New Castle County Police as well as caseload probation officers. (*Id.* at 6, 21)

[5]The precise location of "city" was not identified at the hearing.

obtain a summary of defenant's criminal history. (*Id.* at 8-9, 29)  She counted seven felony convictions, although defendant had not been convicted of all of the offenses charged in the criminal history report. (*Id.* at 9-10; GX1)  The presence of possession of a firearm charges indicated to Lingafeld that defendant was able to procure a firearm. (*Id.* at 22)

5. From her training and experience in supervising violent probationers, Lingafeld recognized that probationers involved in criminal activity are more likely to have violent crime committed on them and to obtain firearms to protect themselves. (*Id.* at 10, 19, 22, 32)  Lingafeld concluded that defendant would likely have a firearm to protect himself.  Considering this as well as defendant's curfew violations, Lingafeld decided to seek approval to search his residence to look for a gun or any contraband that would have shown he was involved in illegal activity. (*Id. at 29, 23)*

6. Lingafeld contacted her supervisor, Cronin,[6] for permission to conduct an administrative search of defendant's residence. (*Id.* at 22, 67)  Because Cronin was not available in person, Lingafeld called and obtained approval from him over the telephone. (*Id.* at 24 67-68; GX5)

---

[6]Cronin became a probation officer in 1986 and a probation supervisor in March 2000. (*Id.* at 65)  He has been the supervisor of Unit 407 of the Safe Streets program since June 2000.  Cronin was familiar with defendant's criminal history prior to receiving Lingafeld's search request. (*Id.* at 69)  Cronin agreed with Lingafeld's suspicion that defendant was armed, based on his own research and observations. (*Id.* at 70-71)  Specifically, since 2005, Cronin has observed victims of shootings become the shooters in subsequent crimes. (*Id.* at 70-72)  Cronin testified that once a shooting occurred, he expected another shooting to follow soon after with the victim arming himself for protection from future shootings or to initiate revenge.

7. At approximately 8:00 p.m. on August 23, 2007, an administrative search of defendant's residence[7] was conducted by Lingafeld, Latsko, and several New Castle County police officers. (*Id.* at 26-27) As soon as defendant opened the door to the residence, he was handcuffed and arrested. (*Id.* at 27) During the search, officers discovered a firearm inside a boot in the hall closet and another firearm hidden between the cushion and arm of the living room couch. (*Id.* at 28)

### III. CONCLUSIONS OF LAW

1. The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Whether a search is reasonable depends on "the degree to which [the search] intrudes upon an individual's privacy" and "the degree to which [the search] is needed for the promotion of legitimate government interests." *United States v. Knights*, 534 U.S. 112, 118-119 (2001). "[B]ecause a probationer's reasonable expectation of privacy is reduced, and the government's reasonable need to monitor that individual likewise is increased, a warrantless search of a probationer's residence requires "no more than reasonable suspicion." *United States v. Barnard,* No. 06-73, 2008 WL 331424, at *3 (D. Del. Feb. 6, 2008) quoting *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005)). To determine whether "reasonable suspicion" exists, the court must examine "the totality of the circumstances to determine whether the 'officer has a particularized and objective basis for suspecting legal wrongdoing.'" *Williams*, 417 F.3d at 376 quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

---

[7] 8 Cheswold Boulevard, Apartment 2A, Newark, Delaware ("the residence"). (*Id.* at 7)

2. Considering the totality of the circumstances at bar in light of this authority, the court finds that the search of defendant's residence was valid based upon a reasonable suspicion that a firearm would be discovered.[8] The record establishes that defendant, while in violation of his curfew, was shot and, within days, had a family member shot after he left the area. The court credits Lingafeld and Cronin's testimony, in general, and specifically regarding their experience with probationers and shootings. *Government of the Virgin Islands v. Gereau*, 502 F.2d 914, 921 (3d Cir. 1974) (The court is charged with reviewing the credibility of witnesses and the weight to be given the evidence, inferences, deductions and conclusions to be drawn from the evidence."). Further, defendant's violent criminal history, including firearms, as well as the admonition by the sentencing court bolster the court's finding that the totality of the circumstances known to probation officers provided them with reasonable suspicion to conduct the search.

## V. CONCLUSION

At Wilmington this 17th day of October, 2008,

IT IS ORDERED that:

1. Defendant's motions to suppress are denied. (D.I. 16, 38)

2. A telephonic status conference is scheduled for **Tuesday, October 28, 2008** at **9:45 a.m.**, with the court initiating said call.

---

[8]In so finding, the court rejects defendant's suggestion to apply Delaware state law cases, and instead follows precedent of the federal courts. *See generally, Hicks v. Miranda,* 422 U.S. 332 (1975); *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86 (1993).

6

3. The time between this order and **October 28, 2008** shall be excluded under the Speedy Trial Act in the interests of justice. 18 U.S.C. § 3161(h)(8)(A).

_____
United States District Judge